**Dorothy ALLER, et al., Plaintiffs,**

v.

**NEW YORK BOARD OF ELECTIONS, United Federation of Teachers, and District Council 37, Defendants.**

**No. 83 Civ. 3227–CSH.**

United States District Court, S.D. New York.

May 7, 1984.

As Amended May 16, 1984.

Murray Richman, Bronx, N.Y., for plaintiffs.

Frederick A.O. Schwartz, Jr., Corp. Counsel, New York City, Atty. for defendant, New York Board of Elections; Susan R. Rosenberg, James F.X. Hiler, New York City, of counsel.

James R. Sandner, New York City, for defendant, United Federation of Teachers; Jeffrey S. Karp, Paul Janis, New York City, of counsel.

Beverly Gross, New York City, Gen. Counsel, District Council 37, Atty. for defendant District Council 37; Eddie M. Demmings, New York City, of counsel.

Martin E. Connor, Brooklyn, N.Y., for intervenors; Stanley K. Schlein, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs in this action, would-be candidates for membership on the New York City Community School Board, District 8, brought this action on by Order to Show

Cause to enjoin the holding of school board elections scheduled to take place on May 3, 1983. Plaintiffs alleged that defendants United Federation of Teachers ("UFT") and District Council 37 had systematically worked to exclude plaintiffs and other minority candidates from holding school board positions by engaging in racially motivated challenges to the legal sufficiency of their nominating petitions, and that the Board of Elections "had permitted plaintiffs to be excluded and their supporters disenfranchised" (Comp. ¶ 10) in violation of 42 U.S.C. §§ 1971, 1983, and 1985 and the Fourteenth and Fifteenth Amendments to the United States Constitution.

A hearing was held before this Court on May 2, 1983, after which plaintiffs' application to enjoin the May 3 elections was denied and defendant New York City Board of Elections' motion to dismiss the complaint was granted. The case is presently before the Court on the separate motions of defendants New York City Board of Elections, District Council 37, and the United Federation of Teachers for an award of attorneys' fees pursuant to 28 U.S.C. § 1927 and 42 U.S.C. § 1988. For the reasons stated, defendants' applications are granted.

DISCUSSION

█ Pursuant to 42 U.S.C. § 1988, a court has discretion to award prevailing parties in, *inter alia*, § 1983 or § 1985 litigation "a reasonable attorney's fee as part of the costs." A distinction has evolved, however, between cases in which plaintiffs are the prevailing parties and those in which defendants seek to recover fees. A prevailing defendant is entitled to recover costs only where the action brought is found to be "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). *See also EEOC v. Pet, Inc.,* 719 F.2d 383, 384 (11th Cir.1983); *Gerena-Valentin v. Koch,* 554 F.Supp. 1017, 1021 (S.D.N.Y.1983); *Ecker v. Colahan,* 542 F.Supp. 896, 903 (S.D.N.Y.1982).

The more stringent standard applicable to defendants is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees should their claims fail. *Badillo v. Central Steel Wire Co.,* 717 F.2d 1160, 1163 (7th Cir.1983). On the other hand, the availability to defendants of attorney's fees awards in egregious circumstances serves "to protect defendants from burdensome litigation having no legal or factual basis." *Christiansburg Garment, supra,* 434 U.S. at 420, 98 S.Ct. at 699. *See also Badillo, supra,* 717 F.2d at 1163; *Gerena-Valentin, supra,* 554 F.Supp. at 1017; *Santiago and Birmingham v. Victim Services Agency,* (S.D.N.Y. Feb. 3, 1984).

A review of the record in this action amply demonstrates, in my view, the legal and factual insufficiency of the claims asserted and the unreasonableness of requiring defendants to expend time and resources in defense preparation on the eve of the disputed election. As noted above, the parties appeared before this Court on May 2, 1983. At that time, counsel for plaintiffs was repeatedly asked to substantiate factually the highly conclusory charges of racial discrimination contained in the complaint. With respect to the allegation that defendant Board of Elections had "permitted" plaintiffs to be excluded from the ballot in violation of their civil rights, the following colloquy ensued:

THE COURT: Do you have evidence that the Board of Elections of the City has applied the election law in a manner which is not uniform?

MR. RICHMAN: Your Honor, we can and are prepared to show that although the Board of Elections has in and of itself taken no specific action, they have made their facilities available in order to document the materials, to wit, opening up the Board of Elections over on weekends and Saturdays for certain parties making that available to them—

THE COURT: Do you criticize them for that, Mr. Richman?

Here is someone who comes forward and says, "I think that a particular nominating petition is subject to challenge under the requirements of the election law."

The Board of Elections in response to that challenge makes its facilities available to evaluate the challenge. Are they to be criticized for that?

MR. RICHMAN: Not at all.

THE COURT: What, then, is your criticism of the Board of Elections?

MR. RICHMAN: To make full availability for one side or the other.

THE COURT: What evidence do you have or can you call of differences in the manner in which the Board of Elections has responded to challenges from one side or the other?

I put that to you because there is no indication in the papers presently that that is what you are charging.

MR. RICHMAN: Your Honor, to be frank with you, I don't want to stay and get sidetracked with that issue, I am willing to let that issue go by and not rely on that issue at all. I am more concerned at the systematic exclusion of black members from the roles of the persons who are to be elected tomorrow in the school board election. That's my major concern.

I am not going to allege to you nor will I stay behind that issue or use that as my major issue that the Board of Elections has chosen to be—to favor one side or another, I'd rather not go into that. The subtleties are even too subtle to even emphasize for a long time.

I have been around in a certain political framework and I know what goes on and we all know what goes on, but it is not something that can be established to any degree of certainty.

(Tr. at 9–10).

As the above exchange indicates, plaintiffs were unable to offer any factual or legal support for their claim against defendant Board of Elections. When asked to relate precisely what the proof would show with respect to defendants UFT and District Council 37, counsel for plaintiffs replied only that the unions had backed challenges to the validity of the nominating petitions of 12 out of 18 minority candidates to the school board, while putting up a slate of primarily white candidates. (Tr. at 13–14). Mr. Richman was unable to explain how such private action could be construed as constituting state action for the purpose of sustaining a cause of action under 42 U.S.C. § 1983. Nor was he able to respond satisfactorily to defendants' contention that no specific acts had been alleged by plaintiffs to support their theory of a conspiracy grounded in racial animus. Counsel's entirely inadequate response was that "conspiracy like beauty [is] in the eyes of the beholder." (Tr. at 51).

Plaintiffs did not contest the fact that they were each found by the Board of Elections to have less than the requisite number of signatures on their nominating petitions. Indeed, Mr. Richman conceded that, in a "petition to validate" proceeding brought before the New York State Supreme Court on behalf of plaintiffs, counsel stipulated before Justice Mercorella to withdraw the validating proceeding in state court with respect to plaintiffs Lewis, Moats and Harris after it became clear that they did not have a sufficient number of valid signatures. (Tr. at 17). The remaining three plaintiffs were eliminated from the ballot after their petitions for validation, submitted to the New York State Supreme Court, were found to have never been verified as required by New York Election Law. Counsel did not contest the fact, brought out during oral argument, that he had prepared the petition to validate which was found by both the New York Supreme Court and the Appellate Division to be fatally defective. (Tr. 28–29). Stated simply, the only proof offered at argument with respect to plaintiffs' nonappearance on the ballot indicated that three plaintiffs had, in effect, stipulated to their exclusion, while the Appellate Division had directed the Board of Elections to remove the names of the other three for noncompliance with statutory requirements.

In a decision from the bench rendered at the conclusion of the May 2 hearing, this Court first noted that plaintiffs had not challenged the constitutionality of the pertinent election laws, either facially or as applied, and that no present constitutional claim could be discerned against defendant Board of Elections from either the complaint or counsel's argument. Rather, the only arguably constitutional challenge was to the actions of defendants UFT and District Council 37 in supporting certain school board candidates and in challenging the candidacy of others, a choice prompted, according to plaintiffs, by racial animus. This same claim had been unsuccessfully raised in the proceedings before the New York Appellate Division. Given the complete lack of factual support proffered by plaintiffs, I expressed grave doubts that racial animus on the part of defendant unions could be established.

Even assuming plaintiffs could demonstrate that defendants' actions were racially motivated, they had failed to offer any legal support for the theory that defendants were acting "under color of state law" and thereby subject to § 1983 liability. Indeed, the only conceivable constitutional theory—that defendants conspired to violate plaintiffs' constitutional rights in violation of § 1985(3)—was found to be insufficiently pled. I noted specifically that the complaint was almost entirely conclusory and, at least with respect to the nonexistent 1981 and 1982 elections, asserted claims that simply could not be true.

My decision to dismiss, however, was not premised solely on the serious deficiencies in the complaint. Plaintiffs had raised and had been accorded a full and fair opportunity to litigate their constitutional claims in state court. Accordingly, by well-established authority, the instant action was found to be barred by the doctrines of *res judicata* and collateral estoppel.

■ In light of the foregoing, I conclude that this is an appropriate instance in which to award attorney's fees. Not only were plaintiffs unable to offer any legal support or factual foundation for the constitutional deprivations alleged, *see Gerena-Valentin, supra,* 554 F.Supp. at 1021 (award of attorney's fees appropriate where there is "no basis in law or fact" for claims asserted); *Colucci v. New York Times,* 533 F.Supp. 1011, 1012 (S.D.N.Y.1982) (attorney's fees awarded where "plaintiffs' alleged claims were without a reasonable basis in fact."), but counsel for plaintiffs was fully cognizant of the fact that his clients had unsuccessfully raised the claims asserted here in prior state court proceedings. He either knew, or as a conscientious attorney should have known, that plaintiffs were altogether precluded from recycling those same claims in federal court. This is not an instance, in other words, where plaintiffs arguably could have prevailed on the merits but failed to do so. Rather, they chose to proceed in the face of an unambiguous legal bar to the action brought.

■ Having determined that an award of attorney's fees is warranted, the question of amount and of allocation among plaintiffs and, potentially, plaintiffs' attorney must be addressed. Defendants argue that this is an appropriate instance in which to assess a portion of their fees directly against plaintiffs' counsel pursuant to 28 U.S.C. § 1927, which provides as follows:

§ 1927. *Counsel's liability for excessive costs* Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As construed by Judge Weinfeld:

"The thrust of the section is to curb dilatory practices and the abuse of court processes by attorneys. The sanctions authorized under section 1927 are not to be lightly imposed; nor are they to be triggered because a lawyer vigorously and zealously pressed his client's interests. The power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof

chill the ardor of proper and forceful advocacy on behalf of his client. To justify the imposition of excess costs of litigation upon an attorney his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse judicial processes." *Colucci, supra,* 533 F.Supp. 1013–1014. *See also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

In my view, counsel for plaintiffs has engaged in a willful abuse of the judicial process by counselling plaintiffs to pursue constitutional claims they were legally precluded from litigating in this forum. With respect to defendant Board of Elections, plaintiffs do not appear to have ever had any viable claim in mind. Further, as noted in this Court's oral decision of May 2, 1983; the complaint is "almost entirely conclusory" and completely devoid of "factual particularity," a deficiency Mr. Richman was unable to correct during oral argument. As recently observed by Judge Werker: "Under Fed.R.Civ.P. 11, an attorney who signs the pleading is obligated to ascertain if there is a sufficient factual basis to support the allegations. One sanction for violation of Rule 11 is to tax the offending attorney with his opponent's legal fees." *Santiago and Birmingham, supra.*

I am additionally troubled by the blatant factual inaccuracies in the complaint—in particular, plaintiffs' allegation that defendants conspired to violate plaintiffs' civil rights during the 1981 and 1982 school board elections (Comp. ¶¶ 5–6), years during which, in fact, no elections took place—and counsel's failure to reveal to the Court the fact that, on behalf of plaintiffs, he had advanced these same claims in state court. Certainly the circumstances of the dispositions in those proceedings were critical here and should have been brought to this Court's attention in the first instance. I conclude, in these circumstances, that the burden of paying the legal fees incurred by defendants should be shared equally between plaintiffs and plaintiffs' counsel, with Mr. Richman shouldering half of that burden.

In determining the amount of the fees to be awarded, this Court is obligated to ensure that the fees requested by the prevailing parties are "fair and reasonable based upon the particular circumstances of the case ... in sum, the equities of the situation are to be considered to assure that although the deterrent purpose of the statute is enforced, a losing party is not subjected to financial ruin." *Colucci, supra,* 533 F.Supp. at 1012–13. After considering the submissions of counsel detailing expenses incurred in defending this suit, I find them to be reasonable and, in light of the allocation contemplated, not excessively onerous for any one party. Defendant New York City Board of Elections calculates that it has incurred fees totalling $2,475, an amount representing the 22½ hours spent by Assistant Corporation Counsel Susan Rosenberg in preparing a defense and in drafting the instant application for attorney's fees. (*See* Rosenberg Aff., App. A). Services performed in connection with the fee application are compensable in this Circuit. *Gagne v. Maher,* 594 F.2d 336, 343–44 (2d Cir.1979). Ms. Rosenberg's requested billing rate of $110 per hour is reasonable in light of her experience, qualifications, and the nature of the services rendered. (*See* Rosenberg Aff., ¶¶ 6–9). Defendant District Council 37 requests fees in the amount of $1,975, a sum representing the hours expended by attorney Beverly Gross and Assistant General Counsel William H. Frappollo and Eddie M. Demmings at the billing rates, respectively, of $100 per hour for Gross and Frappollo and $50 per hour for Demmings. (*See* Demmings Aff.). Defendant UFT seeks fees in the amount of $1,325 for 6¼ hours spent in case preparation by attorney Jeffrey S. Karp and the 5 hours expended by attorney Paul H. Janis, at the billing rates, respectively, of $125 per hour and $100 per hour. Again, I find these rates to be reasonable in light of the experience and qualifications of defense counsel.

CONCLUSION

The sum of the separate fee awards requested is $5,775. Given plaintiff's counsel's significant responsibility for what, in my view, constitutes a substantial waste of judicial resources and an abuse of the judicial process, Mr. Richman is to be assessed half of that amount, or $2,887.50. Each of the six plaintiffs is assessed attorney's fees in the amount of $481.25. Counsel for defendants are directed to settle judgment on five (5) days notice in accordance with this Opinion.

It is SO ORDERED.