Federico **PEREZ**, Robert DeLeon, and Thomas Santiago individually and on behalf of All Others Similarly Situated, Plaintiffs,

v.

Orlando **VELEZ**, individually and as President, Board of Elections in the City of New York, the Board of Elections in the City of New York, the State Board of Elections of the State of New York, and the State of New York, Defendants.

No. 85 Civ. 6268 (RLC).

United States District Court, S.D. New York.

Jan. 29, 1985.

---

Daniels & Reis, P.C., New York City, for plaintiffs; Agostinho Dias Reis, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for City defendants; Susan R. Rosenberg, Michael C. Harwood, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

I

In this litigation the plaintiffs, candidates for election to the New York City Council, sought a preliminary injunction to enjoin the New York State Democratic Primary election on September 10, 1985, unless their names were placed on the ballots. The action was purportedly grounded in Sections 2 and 5 of the Voting Rights Act, 42 U.S.C. § 1971 *et seq.*, the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983, the First, Fourteenth, Fifteenth and Twenty-fourth Amendments to the Constitution of the United States. An order to show cause was filed with the court on August 26, 1985, and Agostinho Dias Reis, counsel for plaintiffs, advised the court that the hearing date could be delayed until a related matter pending before the New York Court of Appeals had been determined. On or about August 28, 1985, Reis sent word to the court that the state proceedings either had been concluded or that the decision did not affect the pending case. Accordingly, the order to show cause was signed, a statutory court was named by Chief Judge Feinberg on August 28, 1985, and the matter was set down for hearing before that court on September 3, 1985. The court consisted of Judge Pierce of the Court of Appeals, Judge Leisure and myself of this court.

Filed with the order to show cause was an amended complaint, memorandum of law, and an attorney's declaration of virtually incomprehensible allegations of Voting Rights violations. From this jumble of assertions one, with difficulty, discerned allegations of changes in election procedures without necessary Justice Department preclearance as Section 5 of the Voting Rights Act requires, refusal by the City to issue rules in Spanish relative to the petitioning process, allegations that the election procedures in effect constituted a proscribed literacy test and effected a poll tax requirement on voters. There were no factual allegations set forth in the papers filed. The papers were almost wholly devoted to a discussion of the court's jurisdiction over Section 5 claims and the necessity for a statutory 3 judge court to resolve the claims asserted.

Since there was considerable difficulty in ascertaining what the complaint was about from a reading of the papers filed, at the outset of the hearing Judge Pierce said to Reis: "It will be appreciated, counsel, if you would address our attention with particularity to what it is you rely upon, what

it is you assert as being violative of federal statute." (Tr. at 4). Reis did not immediately respond to the question but began addressing other matters. The court persisted and was able to elicit from Reis that he was alleging that changes had been made in two election districts without preclearance (Tr. at 6) and that two different listings for the locus of the two separate districts appeared in official publications of the Board of Elections (Tr. at 7). He next contended that some registration cards had not been processed in the Bronx for the explicit purpose of disenfranchising minority voters (Tr. at 11–12). The court asked how he proposed to establish that the purpose was to disenfranchise blacks and Hispanics and advised him that such an objective could only be shown in an evidentiary hearing and requested that he make a proffer of how he proposed to support the allegation. Reis indicated he could prove discrminating purpose through plaintiffs and when advised that was not possible, he said he would establish it through members of the Board but could not name any (Tr. at 14–16). He argued at one point that losing time from work in order to vote amounted to exaction of a poll tax as a prerequisite to the right to vote.

Plaintiffs' counsel's entire argument was frivolous. He never established that any election district or councilmatic district lines had been changed without preclearance. His proffer showed that his allegation that certain registration cards had been processed to disenfranchise minority voters was an unsubstantiated allegation that he could not establish through proof as the term is generally understood in a court of law. The contentions that the subscribing witness requirement was a literacy test and that the New York petitioning process was a poll tax were simply absurd, the whole episode was irresponsibly wasteful of the time and energy of all concerned.

The statutory court had no difficulty in summarily rejecting all of plaintiffs' claims and dissolving the court.

It is on the basis of this record as recited above that defendants have now applied for sanctions against Reis personally in the form of an award of attorney's fees.

II

Attorney's fees may be awarded to the prevailing party in a Voter's Rights case pursuant to 42 U.S.C. § 1973*l*; and under the Civil Rights Act of 1964, 42 U.S.C. § 1988. It may also be awarded against an attorney for unreasonable and vexatious litigation, 28 U.S.C. § 1927, and pursuant to Rule 11, F.R.Civ.P., as well, which provides sanctions where no competent attorney could form a reasonable belief that his pleadings are well grounded in fact or supported by law.

■ In addition, the court has inherent power to impose sanctions in the form of attorney's fees for actions brought in bad faith "entirely without color and made for reasons of harassment or delay or for other improper purposes." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2d Cir.1977); *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980). The relief defendants seek against Reis would be appropriate under any or all of these statutory provisions, Rule 11 or the court's inherent authority.

■ The prevailing party may be awarded attorney's fees under § 1988 for "unreasonable, frivolous, meritless or vexatious" actions. *Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir.1976). The standard for making such awards is the same under the Voting Rights Act and Civil Rights Act. *Gerena-Valentin v. Koch*, 554 F.Supp. 1017 (S.D.N.Y.1983) (Duffy, J.) *aff'd*, 739 F.2d 755 (2d Cir.1984); *Coalition To Preserve Houston v. Interim Board of Trustees*, 494 F.Supp. 738, 742 (S.D.Texas, 1980) *aff'd*, 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981). 28 U.S.C. § 1927 requires an award to be based on an attorney's conduct "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed against attorneys who willfully abuse

judicial processes." *Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1013–14 (S.D. N.Y.1982) (Weinfeld, J.); *Aller v. New York Board of Elections*, 586 F.Supp. 603 (S.D.N.Y.1984) (Haight, J.).

Rule 11 requires an attorney to conduct a reasonable inquiry to determine that the pleadings are based on well founded facts before affixing his signature to the documents. "A showing of subjective bad faith is no longer required to trigger the sanctions imposed by [Rule 11]. Rather, sanctions may be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is unwarranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985) (emphasis in the original).

### III

█ This litigation was wholly frivolous. The pleadings were incomprehensible. Neither the Voters Rights Act, the Civil Rights Act, 28 U.S.C. § 1927, Rule 11 or inherent power of the court are to be utilized to "stifle the enthusiasm or chill the creativity that is the lifeblood of the law". *Eastway Construction Co., supra* at 254. Nor are sanctions in the form of an award of attorney's fees the appropriate way to deal with professional incompetence. Moreover, the underlying litigation here concerns the voting rights of minorities, and the court is particularly mindful of the need not to discourage politically powerless minority voters from bringing legitimate claims into court. Nonetheless, counsel in these cases cannot be permitted to engage with impunity in conduct of egregious professional irresponsibility simply because the frivolous lawsuits they sponsor are in this sensitive civil rights area. Our responsibility is to take needed punitive action against irresponsible and unprofessional

conduct without doing damage to the underlying cause of equal rights which the attorney has ill served.

In opposition to the city's application, Reis has filed another incomprehensible memorandum alleging that the city is in default. How that is possible is difficult to discern, since the matter was heard and dismissed by the court. Reis also filed a stipulation of voluntary dismissal. The court so ordered the stipulation on November 13, all the while wondering what it was all about since the case had already been dismissed. Apparently that was a ploy, but it will not succeed.

The voluntary dismissal so ordered on November 13, was a nullity since there was nothing to dismiss. The matter had already been dismissed by the statutory court. This situation is unlike *Santiago v. Victim Services Agency of the Metropolitan Assistance Corp.*, 753 F.2d 219 (2d Cir.1985), where a preliminary injunction had been denied but the case remained on the docket for a trial on the merits. There the plaintiff filed a stipulation of voluntary dismissal depriving the court of further jurisdiction. Here, however, the court had already thrown the case out because it lacked merit before the voluntary dismissal was filed and so ordered. It is in cases which have been dismissed as lacking in merit that courts have traditionally exercised their power to impose sanctions. The voluntary dismissal filed here could not impinge upon that authority. Indeed, the stipulation of voluntary dismissal was filed in an apparent attempt to avoid the imposition of sanctions in apparent reliance on *Santiago, supra.* As we said, the ploy will not work, at least not in this court. Defendants' motion has been pending since October 15, with its return date adjourned at Reis' request. The court holds that it retains authority to consider and act on the motion.

The motion seeks an award of $10,837.50 in attorney's fees for the time of two attorneys in the Corporation Counsel's office. Susan R. Rosenberg, a 1978 graduate of Emory University School of Law and em-

ployed as Assistant Corporation Counsel since that time, represents that she spent a total of 47½ hours working on the matter, including 12½ hours on the attorneys fee motion. The requested $140 per hour for a lawyer with 7 years experience and Rosenberg's background is reasonable under New York standards. Michael Harwood is a 1982 graduate of Albany Law School and has been employed in the Corporation Counsel's office since graduation. He seeks $125 an hour for 33½ hours spent on the matter, 5 of which were on the motion for fees. I think $100 per hour is the reasonable and fair rate in this market for a lawyer of Harwood's background, qualifications and experience. Accordingly, an award of $3,350 is deemed appropriate for his services, and $6,650 in sanctions is awarded for Ms. Rosenberg's services for a total of $10,000. The sanction is imposed solely against Agostinho Dias Reis.

Accordingly, judgment is granted to the City for $10,000 in attorney's fees against Agostinho Reis. The City is to recover its costs.

IT IS SO ORDERED.