**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2015

Lyle W. Cayce
Clerk

No. 14-50042

————

WENDY DAVIS; MARC VEASEY; PAT PANGBURN; FRANCES DELEON; DOROTHY DEBOSE; SARAH JOYNER; VICKY BARGAS; ROY BROOKS,

>    Plaintiffs - Appellees

v.

GOVERNOR GREG ABBOTT, In His Official Capacity as Governor of the State of Texas; CARLOS CASCOS; THE STATE OF TEXAS,

>    Defendants - Appellants

--------------------------------------------------------------------------------

LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC); Domingo Garcia,

>    Plaintiffs - Appellees

v.

GREG ABBOTT, In His Official Capacity; THE STATE OF TEXAS,

>    Defendants - Appellants

————————————

Appeals from the United States District Court
for the Western District of Texas

————————————

Before STEWART, Chief Judge, and JONES and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This appeal involves the shifting legal landscape under the Voting Rights Act and its impact on Plaintiffs' entitlement to attorneys' fees. Leading up to the 2012 state Senate elections in Texas, Texas failed to gain preclearance of its recently enacted Senate redistricting plan as required under then-existing law. Because Texas's new plan had not been precleared, Plaintiffs filed a lawsuit and successfully blocked the plan for the 2012 elections. A three-judge district court panel in San Antonio enjoined Texas's plan and ordered an interim plan in its place. But after the election, the Supreme Court held that the Voting Rights Act's coverage formula, which automatically subjected Texas to the preclearance requirement, was unconstitutional. Regardless, after the Court's decision, Texas repealed the contested redistricting plan and adopted the court-imposed plan in its place, thus mooting Plaintiffs' lawsuit. The district court then awarded Plaintiffs attorneys' fees and costs. Texas appealed. Because we conclude that the district court erroneously characterized Plaintiffs as prevailing parties, we reverse.

## FACTS AND PROCEEDINGS

In the summer of 2011, the Voting Rights Act required Texas (and a handful of other jurisdictions) to get "preclearance" from the Attorney General or the United States District Court for the District of Columbia before enforcing any new voting-related laws. *See* 42 U.S.C. § 1973c, *declared unconstitutional in part by Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 2612 (2013). Because of this requirement, Texas filed a declaratory judgment action before a three-judge district court in Washington, D.C. in July 2011, seeking preclearance of a new state Senate redistricting plan that Texas had enacted earlier that summer (Plan S148 or "the 2011 plan"). Plaintiffs intervened as defendants in the D.C. case and opposed preclearance of the 2011 plan.

While the preclearance proceedings were pending in D.C., a group of plaintiffs led by state Senator Wendy Davis filed suit before a different three-

No. 14-50042

judge district court in San Antonio seeking to enjoin Texas's 2011 plan.[1] Plaintiffs first challenged the 2011 plan (S148) because it had not, and likely would not, receive Section 5 preclearance from the D.C. court (the "Section 5 claim"). Plaintiffs also challenged the 2011 plan because it allegedly violated Section 2 of the Voting Rights Act, as well as the Fourteenth and Fifteenth Amendments (the "Section 2 and constitutional claims"). They alleged that even if the D.C. court precleared the 2011 plan, the plan could not be administered because it diluted the voting strength of minority voters in two counties in North Texas. Further, Plaintiffs alleged that the 2011 plan dismantled the coalition of minority voters that had elected Davis in Senate District 10. Next, Plaintiffs also sought to enjoin Texas from using its old state Senate plan (S100) because it was malapportioned in violation of the Fourteenth Amendment (the "malapportionment claim"). Finally, Plaintiffs sought to impose a new plan that remedied all of these violations, and they also requested fees and costs.

On September 29, 2011, the San Antonio district court enjoined implementation of the 2011 plan because it had not been precleared under Section 5. The court's order stated that the injunction would "be effective as a permanent injunction, subject to being lifted by order of the Court as appropriate." This injunction, however, did not pause the election cycle in Texas, and the 2012 election deadlines were fast approaching. Because the 2011 plan was still not precleared and because the old plan (S100) would have

---

[1] Plaintiffs Wendy Davis, Marc Veasey, Roy Brooks, Vicky Bargas, Pat Pangburn, Frances DeLeon, Dorothy DeBose, and Sarah Joyner filed suit on September 22, 2011. On October 19, 2011, the district court consolidated this case with a similar lawsuit filed by the League of United Latin American Citizens ("LULAC") and Domingo Garcia. We refer to these parties collectively as "Plaintiffs."

The Defendants in this lawsuit are Governor Greg Abbott, Secretary of State Carlos Cascos, and the State of Texas. We refer to Defendants collectively as "Texas."

violated the Fourteenth Amendment's one-person, one-vote requirement, the district court created an interim plan that Texas could use in the 2012 Senate elections.

The district court's first attempt at fashioning an interim plan was Plan S164. This plan restored Senate District 10 to its pre-2011 configuration and altered five other Senate districts to accommodate that change. In the order issuing Plan S164 on November 23, 2011, the district court insisted that the "interim map is not a ruling on the merits of any claims asserted by the Plaintiffs in this case" and instead was simply imposed to "maintain[] the status quo as to the challenged district pending resolution of the preclearance litigation [in D.C.]"

Texas appealed to the Supreme Court. In its appeal, Texas challenged only the November 23 order implementing Plan S164; it did not appeal the district court's September 29 order blocking the 2011 plan. Texas argued that the district court was required to impose Texas's 2011 plan as an interim remedy instead of imposing a court-crafted plan (Plan S164) to govern the 2012 elections.

In *Perry v. Perez*, the Supreme Court rejected Texas's position. *See* 132 S. Ct. 934, 940 (2012) (per curiam). Although the Court did vacate the district court's order implementing Plan S164, it did not hold that a court-imposed interim plan would always be impermissible. *See id.* at 940, 944. Instead, the Court preliminarily recognized that the San Antonio district court had the "unwelcome obligation" of creating an interim plan for Texas's 2012 primaries and elections. *Id.* at 940 (citation omitted). The Court then remanded the case to the district court to develop an interim plan that was consistent with two newly announced standards. The Court first explained that district courts must use states' legislatively enacted plans "as a starting point" and depart from those plans only in limited circumstances. *Id.* at 941. Then, for the Section

4

2 and constitutional claims, the Court clarified that an interim plan should deviate from an enacted plan only if "those legal challenges are shown to have a likelihood of success on the merits." *Id.* at 942. For the Section 5 claim, however, the Court articulated a different standard, recognizing that only the district court in D.C. had jurisdiction over the merits of Section 5 claims. *Id.* For those claims, the district court's interim plan should alter only those aspects of the state's enacted plan "that stand a reasonable probability of failing to gain § 5 preclearance." *Id.* Under this standard, the district court was to determine whether the Plaintiffs' Section 5 challenges in the D.C. court were "not insubstantial." *Id.*

On remand, Plaintiffs proposed an interim plan that restored Senate District 10 to its pre-2011 configuration. Texas did not object, instead reserving its defenses for the final-judgment stage of the case. The district court approved Plaintiffs' proposed plan on February 28, 2012, and ordered that the plan (Plan S172 or the "interim plan") be used for the 2012 state Senate elections. The district court once again qualified that it was not ruling on the merits of any of Plaintiffs' challenges to the 2011 plan:

> This interim plan is not a final ruling on the merits of any claims asserted by the Plaintiffs in this case or any of the other cases associated with this case. Nor is it intended to be a ruling on the merits of any claim asserted in the case pending in the United States District Court for the District of Columbia. Rather, this interim plan is a result of preliminary determinations regarding the merits of the Section 2 and constitutional claims presented in this case, and application of the "not insubstantial" standard for the Section 5 claims, as required by the Supreme Court's decision in *Perry v. Perez.*

In a March 19, 2012 order explaining the interim plan, the district court reiterated that it had applied the standard announced in *Perry v. Perez.* It further explained that, in adopting the interim plan, it "limited [its] changes in the State's enacted plan to those aspects of the plan 'that stand a reasonable

5

probability of failing to gain §5 preclearance.'" And once again, the district court emphasized that the "order applies only on an interim basis for the 2012 elections to the Texas Senate" and that "[n]othing in this order . . . represents a final judgment on the merits as to any claim or defense in this case, nor does it affect any future claim for attorney's fees." The district court's March 19, 2012 order did not mention Plaintiffs' Section 2 claim.[2]

On August 28, 2012, the district court in D.C. denied preclearance of Texas's 2011 plan. *Texas v. United States*, 887 F. Supp. 2d 133 (D.D.C. 2012), *vacated*, 133 S. Ct. 2885 (2013). The D.C. court concluded that "the Senate Plan was enacted with discriminatory purpose as to SD 10" and that "Texas has not shown that the Senate Plan was enacted without discriminatory intent." *Id.* at 166. Texas again appealed to the Supreme Court. Meanwhile, Texas held its 2012 election using the court-imposed interim plan, and Senator Wendy Davis was reelected.

Next, a quick chain of events in June 2013 complicates the issues raised in this appeal. First, while Texas's appeal of the preclearance denial was still pending in the Supreme Court, the Texas Legislature repealed the 2011 plan and adopted the district court's interim plan (Plan S172) without change. This prompted Plaintiffs to ask the Supreme Court to dismiss as moot Texas's appeal of the D.C. court's preclearance denial on June 24, 2013. The next day, on June 25, 2013, the Supreme Court decided *Shelby County, Alabama v. Holder*, 133 S. Ct. 2612 (2013), finding unconstitutional Section 4(b) of the Voting Rights Act—the section containing the coverage formula that automatically required Texas to seek Section 5 preclearance. Although the

---

[2] In its later order granting Plaintiffs' attorneys' fees, the district court explained that, "[g]iven the Court's conclusion under the § 5 standard, the Court did not need to consider whether Plaintiffs had demonstrated a substantial likelihood of success on the § 2 and Fourteenth Amendment claims because those claims were also remedied through implementation of the § 5 interim remedy."

No. 14-50042

Court reaffirmed the validity of Section 2 and "issue[d] no holding on [Section] 5 itself," the Court held that Section 4(b)'s coverage formula could "no longer be used" because it was based on outdated data. *Id.* at 2619, 2630–31. The day after *Shelby County* came down, on June 26, 2013, then-Governor Rick Perry signed the bill repealing the 2011 plan, adopting the new Senate plan (that is, the district court's interim plan), and making the plan immediately effective. Finally, on June 27, 2013, the Supreme Court vacated the D.C. district court's judgment denying preclearance of Texas's 2011 plan and remanded the case for further consideration in light of *Shelby County* and possible mootness. *See Texas*, 133 S. Ct. 2885.[3]

Back again in the San Antonio district court, the three-judge panel denied as moot Texas's pending motions on July 1, 2013. Because "[a]ll claims and issues, with the exception of attorneys fees and costs, ha[d] been resolved" at that point, the district court then asked the parties to submit a proposed judgment form or dismissal order. Unable to agree on a judgment or order, the parties submitted competing proposals. Texas urged the district court to enter an "order" dismissing the case as moot. In its proposal, Texas did not ask the district court to lift its injunction against the 2011 plan, and its proposed order did not directly refer to Plaintiffs' Section 5 claim. Although Plaintiffs agreed that their Section 2 and constitutional claims should be dismissed as moot, they asked the district court to enter a final "judgment" under Federal Rule of Civil Procedure 58 reflecting their success on their malapportionment and Section 5 claims.

The district court did not adopt either proposal. Instead, on September 4, 2013, the district court entered a "final judgment"[4] that states:

---

[3] The D.C. district court later dismissed the preclearance case as moot.

[4] Texas initially appealed this Final Judgment to this court, arguing that the district court had improperly entered a final judgment on the merits instead of dismissing the case

No. 14-50042

This Court previously ORDERED, ADJUDGED and DECREED:

that Plaintiffs' request for declaratory relief was granted to the extent that Senate plan S100, the benchmark plan, violates the one-person, one-vote requirements of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and will not be used for any further elections;

that Plaintiffs' request for injunctive relief was granted such that Senate plan S148, the 2011 enacted plan, has been permanently enjoined from implementation and no elections have been or will be held thereunder; and

that Plan S172, which was reviewed under the standard set forth in *Perry v. Perez* and restored district 10 to near benchmark configuration and remedied the constitutional infirmities being asserted by Plaintiffs, was to be used for the 2012 election.

It is further ORDERED, ADJUDGED and DECREED:

that because (1) Plan S148 has been repealed, (2) Plaintiffs agree that Plan S172 does not violate the Voting Rights Act or the Constitution, and (3) Plaintiffs do not seek any further relief with regard to Plan S148, Plaintiffs' remaining claims under § 2 of the Voting Rights Act and the Constitution are DISMISSED AS MOOT; and

that, as prevailing parties, Plaintiffs are awarded their reasonable attorneys' fees and costs.

After additional briefing on Plaintiffs' prevailing-party status and the proper amount of attorneys' fees, the district court awarded Plaintiffs $360,659.68 in attorneys' fees and costs. The district court held that the "interim relief obtained by Plaintiffs before Defendants mooted the case" rendered Plaintiffs prevailing parties entitled to this award. Finally, on January 15, 2014, the district court issued a supplemental order awarding Plaintiffs an additional $2,718.75 in attorneys' fees. This appeal timely followed. The notice appealed from "any and all orders and rulings that were adverse to [Texas]."

---

as moot. Plaintiffs moved to dismiss the appeal for lack of jurisdiction, and a motions panel granted Plaintiffs' motion.

No. 14-50042

## STANDARD OF REVIEW

"This court reviews an award of attorneys' fees for abuse of discretion, reviewing factual findings for clear error and legal conclusions *de novo*." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 (5th Cir. 2013) (citing *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008)). Whether a party is a "prevailing party" entitled to fees is a legal question that the court reviews *de novo. Petteway v. Henry*, 738 F.3d 132, 136–37 (5th Cir. 2013).

## DISCUSSION

On appeal, Texas raises two primary issues. First, it contends that because Plaintiffs did not prevail on any of their claims, the district court erred in awarding Plaintiffs attorneys' fees. Second, Texas requests that this court vacate the district court's interim-relief orders.[5] We address each issue in turn.

## I.    Prevailing-Party Status

The threshold issue on appeal is whether Plaintiffs were prevailing parties on any of their claims in the San Antonio district court. In an action seeking "to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the *prevailing party . . .* a reasonable attorney's fee." 42 U.S.C. § 1973*l*(e) (emphasis added). The term

---

[5] Texas also argues that the district court lacked jurisdiction to enter a "judgment" in the case and instead should have entered an "order" dismissing the case as moot. Because the district court did exactly that, this argument is unavailing. The district court's September 4, 2013 entry was titled "final judgment," but it also "dismissed as moot" Plaintiffs' Section 2 and constitutional claims. The judgment did not award any new relief to Plaintiffs, other than an award of attorneys' fees. And the judgment did not alter any of the relief that the district court had "previously" awarded Plaintiffs. Instead, the judgment merely summarized the relief that had been rendered, and that the district court believed warranted a fee award for Plaintiffs. Thus, given the content of the entry, the "judgment" was functionally a jurisdictional dismissal of the Section 2 and constitutional claims and a judgment on the issue of attorneys' fees. And technically, this "judgment" on attorneys' fees was not "final" until the district court determined the amount of fees. *See S. Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 131 (5th Cir. 1993) (per curiam).

"prevailing party" is a legal term of art. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).[6]

Although fee-shifting statutes do not define "prevailing party," the Supreme Court has offered guidance on the term. "The touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (internal quotation marks and citation omitted). "A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). "[A] plaintiff [must] receive at least some relief *on the merits* of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987) (emphasis added). Therefore, "an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing-party] test," *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (per curiam), and plaintiffs are likewise entitled to fees when they prevail through a settlement that is enforced through a consent decree entered by the district court, *see Maher v. Gagne*, 448 U.S. 122, 129–30 (1980).

Before 2001, many circuit courts of appeals recognized the "catalyst theory" of prevailing-party status. *See, e.g.*, *Foreman v. Dallas Cnty., Tex.*, 193 F.3d 314, 319–21 (5th Cir. 1999) (discussing the Fifth Circuit's application of the catalyst theory). Under the catalyst theory, a plaintiff could obtain attorneys' fees if the plaintiff won the relief sought and could demonstrate that the lawsuit itself caused the defendant to alter its conduct. *Id.* at 320. Plaintiffs could satisfy the causation requirement by demonstrating that the lawsuit was

---

[6] Because of their similar language and purpose, § 1973*l*(e) of the Voting Rights Act and 42 U.S.C. § 1988 are identically construed. *See Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 543 (5th Cir. 1980).

"a significant catalyst in motivating the defendants to alter their behavior." *Id.* at 320–21 (internal quotation marks and citation omitted). The Supreme Court rejected this approach. In *Buckhannon*, the Court emphasized that there must be "judicial *imprimatur* on the change" in the legal relationship between the parties. 532 U.S. at 605. That meant that private settlements and a defendant's voluntary change in conduct no longer satisfied the prevailing-party test. *See id.* at 604 n.7, 605.

In the wake of *Buckhannon*, this court has developed a three-part test for evaluating prevailing-party status: "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Petteway*, 738 F.3d at 137. Ultimately, "the fee applicant bears the burden of establishing entitlement to an award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Applying this test, the district court here concluded that Plaintiffs were prevailing parties. On the first prong of the test, the district court concluded that Plaintiffs obtained judicially-sanctioned relief: first, "an injunction preventing use of the enacted [2011] plan," and second, a court-imposed "interim plan to govern the upcoming [2012] election." The district court further characterized the interim plan that the parties agreed to as "a judicially approved settlement or consent decree." Next, on the second prong, the district court concluded that this relief materially altered the legal relationship between the parties: it changed the redistricting plan that governed the 2012 election. Finally, on the third prong, the district court concluded that this relief directly benefitted Plaintiffs, who were able to vote

in their desired districts in the 2012 election. In sum, the district court concluded that Plaintiffs were prevailing parties entitled to attorneys' fees.[7]

On appeal, Texas contends that the district court erred because Plaintiffs are not "prevailing parties" on any of their claims. Plaintiffs, however, argue that they obtained "complete victory." Below, we discuss each of Plaintiffs' claims in turn and ultimately agree with Texas that Plaintiffs were not prevailing parties.

### A. Section 5 and Malapportionment Claims

Texas's primary argument is that Texas—not Plaintiffs—is the prevailing party on the Section 5 and malapportionment claims.[8] According to Texas, after the Supreme Court decided in *Shelby County* that Texas could no longer be subject to the Voting Rights Act's preclearance requirement, the district court's interim-relief orders based on Section 5 "immediately" became unconstitutional, making Texas the prevailing party. Texas, however, waived its opportunity to raise this argument in the district court. It is true that Supreme Court pronouncements must be given full retroactive effect in all cases open on direct review at the time of the Court's ruling, as this case was when *Shelby County* was decided. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). But by the time Texas raised its *Shelby County* argument in the district court, Texas had already mooted the entire lawsuit by repealing the 2011 plan and adopting the interim plan in its place.[9] In other words, when

---

[7] The district court also went on to evaluate what amount of fees was reasonable. Texas, however, only appeals from the district court's prevailing-party determination and admits that it is not challenging the reasonableness of the fee award.

[8] We discuss these two claims together because the district court would not have needed to address the malapportionment challenge to Texas's pre-2011 plan if Texas had not been subject to Section 5's preclearance requirements.

[9] Texas admitted during oral argument that it did not present its *Shelby County* argument to the district court during the merits phase of the litigation. Instead, it was only during the fee litigation—when Texas had already mooted the lawsuit—that Texas raised this argument.

Texas raised this argument, the district court no longer had jurisdiction to entertain it. *See Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013) ("If a claim is moot . . . a court has no constitutional jurisdiction to resolve the issues it presents." (internal quotation marks and citation omitted)). Once a district court no longer has jurisdiction to resolve the plaintiffs' claims on the merits, the defendant cannot continue to collaterally litigate against those claims through the fee litigation in an attempt to avoid liability for fees.

Furthermore, even if the district court had retained jurisdiction to review Texas's *Shelby County* argument, it is far from clear that Texas would have automatically prevailed on the merits. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758–59 (1995) (recognizing that a new rule of law that applies retroactively to pending cases may not automatically determine the outcome of a case if "a previously existing, independent legal basis" can support the relief that the district court awarded); *see also Hulin v. Fibreboard Corp.*, 178 F.3d 316, 332–33 (5th Cir. 1999). As the district court recognized, if Texas had asked the district court to reconsider its interim-relief orders in light of *Shelby County*, the district court could have left the orders in place based on Plaintiffs' Section 2 and constitutional claims. *See Perry*, 132 S. Ct. at 945 (Thomas, J., concurring) (contending that the preclearance regime was unconstitutional and that the San Antonio district court should have considered Plaintiffs' Section 2 and constitutional challenges "in the ordinary course"). Indeed, after *Shelby County*, those claims were ripe for consideration, and Texas's success on those claims was not guaranteed.

Texas's reliance on *Sole v. Wyner*, 551 U.S. 74 (2007), is misplaced. In *Sole*, the Court held that a plaintiff who won a preliminary injunction but then lost at final judgment was not a prevailing party and could not recover attorneys' fees. *See id.* at 83–86. The Court's holding, however, was limited to

the procedural circumstances in *Sole*. The Court explained that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision *in the same case*." *Id.* at 83 (emphasis added).

Unlike *Sole*, the preliminary relief that Plaintiffs won in the district court was never "reversed, dissolved, or otherwise undone by the final decision *in the same case*." *Id.* (emphasis added). Nor could it have been undone based on the Section 5 claim alone. The San Antonio district court never had jurisdiction to address the merits of the Section 5 claim, which was within the exclusive jurisdiction of the district court in D.C. A preliminary injunction and a permanent injunction based on the Section 5 claim therefore, in the unusual posture of this case, could not come from the same court "in the same case." *Id.*

Of course, this lawsuit not only concerned Section 5, but also Section 2 and the Constitution. And to be sure, rather than adopt the district court's interim plan, Texas could have litigated this case to final judgment on these remaining claims. It chose not to. Thus, because Plaintiffs' preliminary relief was never superseded or undone by a later order, this case is much more analogous to the issue that *Sole* expressly declined to address: "whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* at 86.

The crucial question then becomes whether the preliminary relief Plaintiffs won in the district court was sufficient to trigger prevailing-party status. This court addressed this issue most recently in *Dearmore v. Garland*, 519 F.3d 517 (5th Cir. 2008). In *Dearmore*, this court held that a plaintiff who secured a preliminary injunction against a municipal ordinance could still recover attorneys' fees when the city later mooted the case by amending the contested ordinance. *Id.* at 519–20, 524–26. The court emphasized that "[t]he

fact that [the plaintiff] never obtained a final judgment on the merits does not affect our ruling, as a final judgment is not required." *Id.* at 526. Instead, as in this case, the district court in *Dearmore* entered a final judgment dismissing the case as moot and simultaneously found that the plaintiff was a prevailing party entitled to attorneys' fees and costs. *Id.* at 520. In affirming the district court's prevailing-party finding, this court established that, to qualify as a prevailing party in a preliminary-injunction context, a plaintiff:

> (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits.

*Id.* at 524.[10] Although this court stated that the *Dearmore* test "is only applicable in the limited factual circumstances" that the court confronted in *Dearmore, id.* at 526 n.4, the test provides persuasive guidance for resolving the unique fee issue presented here.

Plaintiffs satisfy all but one of the *Dearmore* requirements. On the first *Dearmore* prong, both of the orders that granted relief to Plaintiffs—the September 29, 2011 order enjoining the 2011 plan and the February 28, 2012 order implementing the interim plan—were functionally similar to preliminary injunctions. Although the district court labeled the September 29 injunction as "permanent," it was preliminary in effect, given the D.C. district court's pending preclearance review. The district court's February 28 interim-relief order also operated as a preliminary injunction. Although the district

---

[10] As *Dearmore* recognized, only the Fourth Circuit disagrees with this approach for determining prevailing-party status after the issuance of a preliminary injunction. *See* 519 F.3d at 526 n.4; *see also Smyth v. Rivero*, 282 F.3d 268, 276–77 (4th Cir. 2002) (holding categorically that preliminary injunctions do not trigger prevailing-party status because the merits inquiry in that context is "necessarily abbreviated").

court later characterized this interim plan as "essentially a judicially approved settlement or consent decree," the relief ordered was not a final settlement of the litigation. Instead, the relief was temporary: it only applied to the 2012 election.

Plaintiffs likewise satisfy the third *Dearmore* requirement. The district court's implementation of the interim plan caused Texas to repeal its 2011 plan and to adopt the interim plan in its place, thereby mooting the lawsuit and preventing Plaintiffs from obtaining final relief on the merits of their claims. Legislative history confirms that the Texas Legislature adopted the interim plan in part to "diminish the expense of further time and money by all parties in Texas' ongoing redistricting litigation." S.B. 2 § 2(3)(A). Making the causal link more apparent, Texas not only repealed the 2011 plan, but it also adopted the district court's interim plan (Plan S172) without change.

It is the second *Dearmore* requirement that Plaintiffs fail to satisfy. *Dearmore* does not apply here because the district court in *Dearmore* analyzed the merits of that particular controversy. As this court emphasized, it was crucial that the preliminary injunction in *Dearmore* was "based upon an unambiguous indication of probable success *on the merits* of the plaintiff's claim." 519 F.3d at 524 (emphasis added); *see also Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 10–11 (1st Cir. 2011) (explaining that a court-approved settlement falling short of a formal consent decree must be based on a "sufficient appraisal of the merits" to trigger prevailing-party status). Here, however, the district court's analysis did not touch the merits of the Section 5 claim in any way. Instead, all the district court had jurisdiction to do was to defer to the district court in D.C. Before issuing the September 29 injunction, the district court was faced with a simple threshold question that required a "yes" or "no" answer: had Texas's 2011 plan been approved in D.C.? Even when that answer was "no," the next level of analysis still did not address the merits

of Plaintiffs' Section 5 claim. Only the D.C. district court could assess the merits of a Section 5 challenge, and the Supreme Court "ha[s] made clear that other district courts may not address the merits of [Section] 5 challenges." *Perry*, 132 S. Ct. at 942. When drafting an interim plan, a local district court "must therefore be careful not to prejudge the merits of the preclearance proceedings. The court should presume neither that a State's effort to preclear its plan will succeed nor that it will fail." *Id.* Thus, when the district court issued the February 28 interim-relief order, the district court was only permitted to determine whether Plaintiffs' Section 5 claim was "not insubstantial." *Id.* That inquiry did not involve merits analysis, and it therefore fell short of the searching (albeit preliminary) merits inquiry required to find prevailing-party status under *Dearmore*.

The district court's orders implementing the interim plan reinforce the conclusion that the relief Plaintiffs won does not satisfy *Dearmore*. First, in issuing the interim plan, the district court emphasized that the plan "[was] not a final ruling on the merits of any claims asserted by the Plaintiffs in this case or any of the other cases associated with this case." Likewise, the plan was not "intended to be a ruling on the merits of any claim asserted in the case pending in the United States District Court for the District of Columbia." Finally, making it abundantly clear, the district court stated that "[n]othing in [its] order explaining [the interim plan] represents a final judgment on the merits as to any claim or defense in this case, nor does it affect any future claim for attorney's fees."

In sum, the district court could not base any Section 5 interim relief upon "an unambiguous indication of probable success on the merits." *Dearmore*, 519 F.3d at 524. As a result Plaintiffs failed to obtain judicially-sanctioned relief sufficient to achieve prevailing-party status. We therefore hold that Plaintiffs

17

did not acquire prevailing-party status based on their Section 5 or malapportionment claims.

**B. Section 2 and Constitutional Claims**

Plaintiffs' Section 2 and constitutional claims also do not trigger prevailing-party status. Of course, under *Perry v. Perez*, both of these claims could have been analyzed under the traditional preliminary-injunction standard, potentially bypassing the *Dearmore* problem that arises for Plaintiffs' Section 5 claim. *See* 132 S. Ct. at 942. Here, however, because the district court never evaluated Plaintiffs' Section 2 or constitutional claims, those claims are also not within *Dearmore*'s recognition of prevailing-party status. Although the district court's February 28, 2012 interim-relief order references the preliminary-injunction standard that governed these claims, it did not apply that standard. Indeed, in the district court's March 19 order, it emphasized that it only applied the "not insubstantial" standard for the Section 5 claim; it never mentioned Section 2 or the preliminary-injunction standard. As the order explains, the district court "limited [its] changes in the State's enacted [2011] plan to those aspects of the plan 'that stand a reasonable probability of failing to gain § 5 preclearance.'" Finally, in its order awarding fees, the district court disavowed ruling on the Section 2 and constitutional claims. It noted "the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues" and confirmed that it "did not need to consider whether Plaintiffs had demonstrated a substantial likelihood of success on the § 2 and Fourteenth Amendment claims because those claims were also remedied through implementation of the § 5 interim remedy."

Altogether, the district court's orders demonstrate that Plaintiffs never secured judicially-sanctioned relief on their Section 2 and constitutional claims. Although Texas eventually adopted the interim plan that remedied (and therefore mooted) these claims, this relief was not judicially sanctioned.

From a fees perspective, given *Buckhannon* and the Supreme Court's rejection of the catalyst theory that we had endorsed, this means that Plaintiffs were not prevailing parties on either the Section 2 or the constitutional claims. *See Buckhannon*, 532 U.S. at 600 (holding that a party that has failed to secure judicially-sanctioned relief, "but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," is not a "prevailing party").

Resisting this conclusion, Plaintiffs assert that fee-eligible claims that are not addressed because of constitutional avoidance can nevertheless support a fee award. In support of this argument, Plaintiffs rely primarily on this court's opinion in *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541 (5th Cir. 2003). In that case, the plaintiff asserted both a § 1983 claim and a state-law claim. *Id.* at 544. Only the § 1983 claim was eligible for fees under 42 U.S.C. § 1988. The district court decided the pendent state-law claim in favor of the plaintiff, but it did not reach the § 1983 claim. *See id.* at 550. Because it did not resolve the fee-eligible § 1983 issue, the district court denied the plaintiff's § 1988 fee request. *Id.* at 544–45. On appeal, this court reversed, holding that even though the district court did not decide the fee-eligible § 1983 claim, the pendent state-law claim could still support a fee award under § 1988 because the § 1983 claim was "substantial" and the successful state-law claim arose out of a "common nucleus of operative facts." *Id.* at 551.

*Southwestern Bell* is inapplicable here because even when a district court exercises constitutional avoidance on a fee-eligible claim, plaintiffs still must secure judicially-sanctioned relief that entitles them to fees. *Cf. Buckhannon*, 532 U.S. at 605 (rejecting the catalyst theory); *Bailey v. Mississippi*, 407 F.3d 684, 690 (5th Cir. 2005) (reversing award of attorneys' fees for the plaintiffs because the district court improperly relied on the catalyst theory to award fees). Transposing the *Southwestern Bell* scenario to the claims in this case,

No. 14-50042

Plaintiffs' Section 2 and constitutional claims were the fee-eligible claims that the district court avoided deciding. These claims were surely "substantial." *See Sw. Bell*, 346 F.3d at 551 n.43 (explaining that the substantiality test is satisfied as long as the "issue raised in the fee claim [is] not . . . wholly insubstantial, obviously frivolous, plainly insubstantial or obviously without merit" (internal quotation marks and citation omitted)). These claims also arose from the same nucleus of operative facts as the Section 5 claim. The analogy falls apart, however, when comparing the resolution of the pendent claims in the two cases. In *Southwestern Bell*, the district court resolved the plaintiff's pendent state-law claim on the merits, granting summary judgment for the plaintiff. *Id.* at 544–45. The plaintiff therefore won judicially-sanctioned relief. In contrast, Plaintiffs' pendent claim here—the Section 5 claim—was never resolved on the merits in the district court, nor could it have been. Indeed, as discussed above, the interim relief that the district court awarded on the Section 5 claim did not trigger a fee award. Therefore, because *Southwestern Bell* cannot apply here without invoking the discredited catalyst theory, Plaintiffs' Section 2 and constitutional claims do not support an award of attorneys' fees.

In the end, Plaintiffs' failed to achieve judicially-sanctioned relief that sufficiently addressed the merits of any of their claims. Plaintiffs were therefore not prevailing parties, and the district court erred in awarding Plaintiffs attorneys' fees.

## II.   Vacatur

Finally, in addition to its arguments against prevailing-party status, Texas requests that this court vacate the two orders on which the district court based its prevailing-party determination: the September 29, 2011 injunction enjoining the 2011 plan and the February 28, 2012 order imposing the interim plan for the state's 2012 Senate election. In support of this request, Texas cites

two developments: the Supreme Court's decision in *Shelby County* and the mootness that arose in the lawsuit after Texas repealed the 2011 plan.

We need not resolve this issue because Texas never asked the district court for this relief. Although Texas believes that *Shelby County* compelled the district court to vacate both of these orders, Texas did not return to the district court to seek vacatur after *Shelby County* came down. Instead, it repealed the 2011 plan and adopted the district court's interim plan in its place, thus mooting Plaintiffs' lawsuit. As a result, the district court never considered whether *Shelby County* required it to vacate the interim plan or the injunction, or instead whether Section 2 and the Constitution could have independently supported that relief. Texas only sought vacatur on appeal to fortify its position against attorneys' fees. That request came too late, and we will therefore not consider it. *See Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) (per curiam) ("Failure to raise an argument before the district court waives that argument . . . .").

Mootness likewise does not require vacatur of the interlocutory orders. On this point, Texas argues that its request for a jurisdictional dismissal necessarily included a request that the district court vacate all previous interim-relief orders. Texas provides no legal authority supporting its argument, as the two cases it cites are inapposite. *See Avitts v. Amoco Production Co.*, 53 F.3d 690, 694 (5th Cir. 1995) (per curiam); *Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 568 (5th Cir. 1991) (per curiam). In both cases, the district court *already* lacked subject-matter jurisdiction at the time the challenged orders were entered. Here, by contrast, the district court had jurisdiction when it entered the interim-relief orders; it was only later, after Texas repealed the 2011 plan, that the case became moot and eliminated the district court's jurisdiction over the remaining issues in the lawsuit. Therefore, jurisdictionally speaking, the district court had authority to enter both orders.

No. 14-50042

In sum, because Texas's request to vacate the interlocutory orders is immaterial in light of our decision to reverse Plaintiffs' attorneys' fee award on other grounds, and because Texas never asked the district court for such relief, this court need not vacate either interim-relief order.

## CONCLUSION

For the foregoing reasons, we conclude that the district court erred in declaring Plaintiffs prevailing parties and granting them attorneys' fees. We therefore REVERSE the district court's fee order.