# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 14-60896

—————

PATRICIA ANDERSON,

> Plaintiff – Appellant

v.

HARRISON COUNTY, MISSISSIPPI,

> Defendant – Appellee

United States Court of Appeals
Fifth Circuit
**FILED**
February 12, 2016

Lyle W. Cayce
Clerk

———————————————————————————————————————

Consolidated with 15-60204

PATRICIA ANDERSON,

> Plaintiff – Appellee

v.

HARRISON COUNTY, MISSISSIPPI,

> Defendant – Appellant

—————————

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 1:13-CV-302

—————————

No. 14-60896 cons/w No. 15-60204

Before DENNIS and COSTA, Circuit Judges, and ENGELHARDT, District Judge.*

PER CURIAM: **

Presently before the Court are two consolidated appeals.  In Case Number 14-60896, Patricia Anderson ("Anderson"), proceeding *pro se*, appeals the district court's summary judgment dismissal of her claims filed against her employer, Harrison County, Mississippi ("Harrison County" or "the County"),  pursuant to the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  In Case Number 15-60204, Harrison County appeals the district court's subsequent rejection of its request for an award of attorney's fees.  For the following reasons, we AFFIRM the district court's judgments in both matters.

**I.**

Anderson, an African-American woman, began working, in 2007, as a correctional officer for Harrison County at the Harrison County Adult Detention Center ("the detention center" or "the center").  For much of her employment at the center, Anderson was assigned to the position of canteen officer and was supervised by Captain Elaine Lege.  While working in that position, Anderson worked an eight-hour shift on Monday through Friday.

In April 2012, however, Major David Sanderson became the warden of the detention center.  Upon assuming that position, he initiated a facility-wide

---

* Chief Judge of the Eastern District of Louisiana sitting by designation.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60896 cons/w No. 15-60204

restructuring of the correctional officer position designed to increase efficiency and counteract staffing and budgetary shortfalls, which the center was experiencing. Sanderson's first step was to evaluate the job duties and responsibilities of all the correctional officers working at the center. As a result, he decided that correctional officers then working eight-hour shifts in the booking and offender services departments would be reassigned to the twelve-hour shifts worked by the correctional officers with rotating, rather than fixed, duties.[1]

Sanderson began this transition in June 2012 with the booking department. Thereafter, in mid-September 2012,[2] the job duties previously performed solely by the correctional officers assigned to certain offender services positions, i.e., the disciplinary, courtroom, mail, and canteen clerks, became part of the overall responsibilities shared by all of the correctional officers working twelve-hour shifts. At the same time, all of the employees whose offender services positions were eliminated, including Anderson, were reassigned to general corrections officer positions with rotating twelve-hour shifts instead of eight-hour shifts.

Prior to implementing these changes, Sanderson met with each affected employee and explained the nature of the transition. More specifically, Sanderson met with Anderson in June or July of 2012 to inform her that her assignment as a canteen officer would end in September and that, thereafter, that she would work twelve-hour shifts as a general correction officer. In late August 2012, Anderson took leave under the Family Medical Leave Act. When she subsequently returned to work on September 17, 2012, the aforementioned

---

[1] In his deposition, Sanderson explained that corrections officers "rotate shift" every ninety days. ROA 15-60204.397.

[2] This was the first ninety-day shift change occurring after Sanderson began re-structuring the correctional center's staff in June 2012.

3

changes had been made. Three days later, Anderson submitted documentation from her psychotherapist stating that she was suffering from severe anxiety and depression and, as a result, could only work a 6-8 hour shift. Anderson was told, however, that her request could not be accommodated because no position with an eight-hour shift was available as a result of the restructuring.

Dissatisfied with this result, Anderson commenced an action in federal district court, on July 22, 2013, against Defendants Harrison County, the Harrison County Adult Detention Center, the Mississippi Board of Supervisors (the Board), Elaine Lege, and David Sanderson. In her complaint, Anderson brought a claim under Title VII, alleging that her transfer from an eight to a twelve-hour shift constituted discrimination on the basis of her race, and a claim under the ADA, alleging that Defendants' refusal to accommodate her depression by allowing her to work a shorter shift constituted disability discrimination.

On October 10, 2014, Sanderson and Lege filed a motion for summary judgment in their individual and official capacities seeking to dismiss all claims against them. Three days later, the County and the Board filed a document titled "Joinder," which provided that the County and the Board "hereby join in Warden Sanderson and Captain Lege's Motion for Summary Judgment" and "adopt[] and incorporate[] . . . all of the contents, citations and authorities in said Motion and Memorandum in Support."[3] Subsequently, on November 6, 2014, the Board and the County filed a document titled "Amended Joinder."[4] This document was substantially the same as the initial joinder and reiterated the County and the Board's intent to join in Sanderson and Lege's motion for summary judgment. The amended joinder, however, added a final clause explicitly stated, "Harrison

---

[3] ROA 15-60204.448

[4] ROA 15-60204.452

No. 14-60896 cons/w No. 15-60204

County, Mississippi and Harrison County Board of Supervisors would move this Court for Summary Judgment on their behalf."

In opposing the pending motion for summary judgment, Anderson objected to Harrison County's amended joinder as untimely, but nonetheless responded to the issues raised by the motion relative to her Title VII and ADA claims. In that document, she also withdrew her Family Medical Leave Act claim and agreed to dismiss her remaining claims against all defendants except Harrison County.[5] The district court granted that request on November 20, 2014.[6] Shortly thereafter, on December 1, 2014, the district court granted Harrison County's motion for summary judgment relative to the merits of Anderson's Title VII and ADA claims, and entered final judgment in its favor. Anderson's appeal of that ruling, in Case Number 14-60896, followed on December 18, 2014.

In the meantime, on December 15, 2014, Harrison County filed a motion seeking an award of the attorney's fees authorized to a prevailing party in a lawsuit brought under Title VII, 42 U.S.C. § 2000e-5(k), and under the Americans with Disabilities Act, 42 U.S.C. § 12117(a). On February 25, 2015, the district court denied that motion. Harrison County's appeal of that ruling, in Case Number 15-60204, followed on March 27, 2015. The two appeals are now consolidated for consideration by this Court.

## II.

Anderson first argues that the district court erred in granting the County's motion for summary judgment because it filed the amended joinder after the deadline for filing dispositive motions had elapsed. While the district court determined that the County's amended joinder was untimely, it held that the

---

[5] ROA 15-60204.470.
[6] ROA 15-60204.492.

5

initial joinder the County filed was sufficient to put Anderson on notice of her obligation to respond to the County's motion for summary judgment. We agree. Harrison County's initial joinder gave Anderson ample notice that it was joining in Sanderson and Lege's pending motion for summary judgment and that it was adopting their arguments in full. Anderson conceded as much when she represented to the district court that she had in fact responded to the County's arguments in her opposing brief. Consequently, Anderson had both sufficient notice and a full opportunity to respond to the County's motion for summary judgment and the district did not err in considering it.

Anderson next argues that the district court erred in holding that she failed to make out a prima facie case of racial discrimination under Title VII. To establish a prima facie claim of discrimination under Title VII a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse action was taken "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1980); *Rutherford v. Harris Cnty.*, 197 F.3d 173, 179 (5th Cir. 1999); *Jones v. W. Geophysical Co. of America*, 669 F.2d 280, 284-85 (5th Cir. 1982). "To raise an inference of discrimination, the plaintiff may compare [her] treatment to that of . . . similarly situated individuals." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). However, to make such a showing, "a plaintiff must show that [s]he was treated less favorably than others under nearly identical circumstances." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (internal quotations omitted). Comparators "with different supervisors[] [or] who work for different divisions of a company . . . generally will not be deemed similarly situated." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

6

No. 14-60896 cons/w No. 15-60204

Before the district court, Anderson argued that she was subject to discrimination because she was required to change from an eight-hour shift to a twelve-hour shift, whereas a white corrections officer, Mary Knebel, who worked in sanitation, was not. We agree with the district court that Anderson's claim lacks merit given that she has failed to demonstrate that she and Knebel were similarly situated.

Rather, unlike Anderson, Knebel was a supervisor in charge of a kitchen crew, a sanitation crew, and inmate workers. Further, according to Sanderson, Knebel worked shifts ranging between eight and eleven hours, depending on her job responsibilities that day, was "on call" at all times, and had responsibilities equal to that of a sergeant.[7] Finally, given the nature of Knebel's supervisory responsibilities, which included the authority to retain or dismiss inmates from worker status, it was not possible to simply reassign her duties to other corrections officer, as Sanderson had done with the offender services positions eliminated during restructuring. As a result of these differences, Knebel was not sufficiently similar to serve as an appropriate comparator for Anderson's change of shift claim and the district court correctly dismissed it on that basis.

We likewise affirm the district court's dismissal of Anderson's ADA claim. The ADA defines discrimination to include, among other things:

> the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship.

42 U.S.C. § 12112(b)(5)(A). To make out a failure to accommodate claim under the ADA, a plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by

---

[7] ROA 15-60204.237

7

the covered employer; and (3) the employer failed to reasonably accommodate those known limitations. *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Although a reasonable accommodation may include "part-time or modified work schedules," *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting 42 U.S.C. § 12111(9)(B)), "an accommodation that would result in other employees having to work harder or longer is not required under the ADA." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996) (per curiam).

Sanderson testified that Anderson's request to work an eight-hour shift was unworkable due to the detention center's staffing and budget shortfalls. According to Sanderson, even when all of the corrections officers worked twelve-hour shifts, the facility often was short-staffed, requiring some of the higher-ranking officers to feed the inmates and gather paperwork. As a result, Anderson's scheduling accommodation could not have been accomplished without requiring other corrections officers to work longer hours and extended shifts. In response, Anderson failed to submit any evidence that either rebutted or undermined Sanderson's testimony that her requested accommodation would have caused this manner of hardship. We therefore affirm the district court's dismissal of Anderson's ADA claim on that basis.[8]

---

[8] Anderson also argues that the district court erred in dismissing her ADA claim because the court analyzed the claim under a disparate treatment analysis rather than a reasonable accommodation analysis as pleaded in the complaint. We agree that this was error. "A failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment and is analyzed separately under the law." *Bridges v. Dep't of Soc. Servs.*, 254 F.3d 71, 71 n.1 (5th Cir. 2001) (unpublished); a*ccord* E.E.O.C. v. *LHC Grp.*, 773 F.3d 688, 703 n.6 (5th Cir. 2014). Nevertheless, we may affirm the district court on any basis supported by the record, which reflects, in this instance, that Anderson failed to rebut the County's showing that her requested accommodation would have imposed an undue burden. *Bridges*, 254. F.3d at 71.

No. 14-60896 cons/w No. 15-60204

III.

Title VII, 42 U.S.C. § 2000e-5(k), and the Americans with Disabilities Act, 42 U.S.C. § 12117(a), like 42 U.S.C. § 1988(b), authorize the court, in its discretion, to award attorneys' fees to the prevailing party.  The purpose of these provisions is to ensure "effective access to the judicial process for persons with civil rights grievances." *Dean v. Riser,* 240 F.3d 505, 507 (5th Cir. 2001) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (internal quotations omitted)). "Therefore, a prevailing plaintiff is deserving of an award of attorney's fees because they are assessed against a 'violator of federal law.'" See C*hristiansburg Garment Co. v. EEOC,* 434 U.S. 412, 418, (1978).

"In the case of prevailing civil rights defendants, however, the aforementioned policy considerations, which support the award of fees to a prevailing plaintiff, are inescapably absent." *Dean*, 240 F.3d at 507.  "As such, '[a] successful defendant seeking counsel fees . . . must rely on quite different equitable considerations." *Id.* (quoting C*hristiansburg*, 434 U.S. at 419).  Namely, while Congress wanted to "'make it easier for a plaintiff of limited means to bring a meritorious suit,'" it also "wanted to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420 (citation omitted).

Although the language found in those statutes is discretionary, the applicable standard differs if a defendant, rather than a plaintiff, prevails.  More specifically, a prevailing plaintiff ordinarily is awarded attorneys' fees in all but special circumstances.  *Dean*, 240 F. 3d at 508 (citing C*hristiansburg* 434 U.S at 406).  "The supreme court has held that prevailing parties should be awarded reasonable fees, absent exceptional circumstances rendering such an award unjust."  *Hensley*, 461 U.S. at 429.  Thus, a prevailing plaintiff in a civil rights action is presumptively entitled to reasonable attorney's fees, unless a showing

9

of "special circumstances" is made that would deem such an award unjust. *See Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 557 (5th Cir.1998).

A more rigorous standard exists, however, for awarding attorney's fees to prevailing defendants. *Dean,* 240 F.3d at 508. That is, a district court may award attorney's fees to a prevailing civil rights defendant only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id.* (citing *Christiansburg,* 434 U.S. at 421; *Hensley* 461 U.S. at 429 n. 2)). Thus, attorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was "vexatious, frivolous, or otherwise without merit." *Id.* However, "the term 'vexatious' in no way implies that the plaintiff's bad faith is a necessary prerequisite to a few award against him." *Christiansburg,* 434 U.S. at 421.

"The 'stringent standard applicable to defendants is intended to ensure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees should their claims fail.'" *Myers v. City of West Monroe,* 211 F.3d 289, 292 n. 1 (5th Cir. 2000) (quoting *Aller v. New York Bd. of Elections*, 586 F. Supp. 603, 605 (S.D.N.Y.1984)). Similarly, a plaintiff's voluntary dismissal of his complaint does not automatically subject him to attorney's fees:

> [A] plaintiff whose claim appeared meritorious at the onset may encounter various changes in his litigation posture during the unpredictable course of litigation. "Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation." *Christiansburg*, 434 U.S. at 423, 98 S. Ct. 694. Should such events create insurmountable problems of proof for the plaintiff, voluntarily withdrawing the complaint with prejudice would be the prudent thing to do. *See Marquart* [*v. Lodge 837*, 26 F.3d 842, 852 (8th Cir. 1994)].

* * *

10

> With respect to the more calculating plaintiff, who voluntarily withdraws his complaint "to escape a disfavorable judicial determination on the merits," the balance tips in favor of the counter policy to discourage the litigation of frivolous, unreasonable, or groundless claims. *Id.* Any rule that categorically forecloses the possibility of a defendant being found a prevailing party in such circumstances could seriously threaten the effectuation of this policy.

*Dean,* 240 F.3d at 510.

The Court reviews de novo the question of whether a party is a prevailing party. *Davis v. Abbott,* 781 F.3d 207, 213 (5th Cir. 2015).  On the other hand, a fee award, or the denial of fee request, is reviewed for abuse of discretion with factual findings subject to review for clear error and conclusions of law reviewed de novo. *Davis,* 781 F.3d at 213 (fee award); *Vaughner v. Pulito,* 804 F.2d 873, 878 (5th Cir. 1986) (denial of fee award).

Applying these principles here, we agree with the district court that the issue is a close one, in this instance, and that Harrison County's arguments in favor of a fee award are not without appeal. In the end, however, we decline to find that the district court abused its discretion in denying Harrison County's request for attorney's fees.

In explaining its decision, the district court acknowledged the three factors set forth in *Myers v. City of West Monroe* that, as argued by Harrison County, seemingly favor an award of attorney's fees.  Emphasizing that those factors are not the exclusive determinants of the issue, however, the district court also aptly noted that Officer Knebel, while having differing job duties from those borne by Anderson, did share the same overall classification of correctional officer.  Thus, Anderson's discrimination claim, while flawed and ultimately futile, had enough

factual support to avoid being characterized as "frivolous, unreasonable, or without foundation." The same is true of Anderson's ADA claim.

Further, while Anderson's history of worker's compensation claims gives us some pause, Harrison County points to nothing in the record demonstrating that the claims were completely unfounded. Thus, we agree with the district court that neither it nor we are in a position to adjudge the merits of those claims. Finally, regarding the parties that Anderson dismissed shortly before the district court's summary judgment ruling, the record is not such to demonstrate clear error by the district court in concluding those dismissals resulted from Anderson's ongoing good faith examination of her claims during the course of the proceeding, rather than simply a belated gesture designed solely to avoid an imminent and unfavorable judicial determination on the merits.

Accordingly, for these reasons, we AFFIRM the judgment of the district court.