# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 22, 2013

No. 11-60492

Lyle W. Cayce
Clerk

ERGON-WEST VIRGINIA, INCORPORATED,

Plaintiff - Appellee

ERGON REFINING, INCORPORATED,

Plaintiff - Cross Appellant

v.

DYNEGY MARKETING & TRADE,

Defendant - Appellant Cross Appellee

ERGON REFINING, INCORPORATED,

Plaintiff - Cross Appellant

v.

DYNEGY MARKETING & TRADE,

Defendant - Appellant Cross Appellee

Appeals from the United States District Court
for the Southern District of Mississippi

No. 11-60492

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Appellant-Cross Appellee Dynegy Marketing and Trade ("Dynegy") and Cross Appellant Ergon Refining appeal the district court's holding that Dynegy had no contractual duty to Ergon Refining to attempt to secure replacement gas after declaring force majeure in response to hurricane damage, but did have such a duty to Ergon-West Virginia ("Ergon-WV") under a separate contract. For the reasons provided below, we hold that neither contract required Dynegy to attempt to secure replacement gas during the force majeure period. We AFFIRM the district court's ruling on the Ergon Refining contract and REVERSE and RENDER with respect to the Ergon-WV contract.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a contract dispute between a natural gas clearinghouse, Dynegy, and two separate entities that manage refinery plants, Ergon Refining and Ergon-WV. The two Ergon entities[1] have contracted with Dynegy to provide their natural gas supply since 1993[2] and 1997, respectively. When Hurricanes Katrina and Rita hit in 2005 and caused extensive damage to the gas industry's infrastructure, Dynegy's own internally designated suppliers declared force majeure. Dynegy followed suit, reducing its supply of gas to both Ergon entities. This forced Ergon Refining and Ergon-WV to buy gas on the open market at increased cost during the force majeure event. To recoup these costs, they sued Dynegy in Mississippi state court, alleging that their respective contracts' force majeure provisions required Dynegy to attempt to secure replacement gas, which

---

[1] Ergon-WV is a subsidiary of Ergon Refining. The two are separate legal entities.

[2] This contract was originally with Chevron, as gas supplier, but was later assigned to Dynegy.

2

No. 11-60492

Dynegy admits that it did not do.[3] Instead, Dynegy contends that it had no such contractual duty to either Ergon company.

After the two Ergon companies' suits were removed to federal court and consolidated, the district court held a bench trial. Following trial, the district court determined that the Ergon Refining contract was ambiguous and that extrinsic evidence showed that the contract did not obligate Dynegy to attempt to secure replacement gas. But the court concluded that the Ergon-WV contract unambiguously required Dynegy to make this attempt. The court's analysis hinged on the language of the force majeure provisions in each contract.

Interpreting the Ergon Refining contract, the district court ruled for Dynegy. The language in this contract required the party invoking force majeure to demonstrate that it had "remedied with all reasonable dispatch" the force majeure event.[4] The court concluded that this provision was ambiguous for two main reasons. First, it determined that one of the recitals of the contract, which specifies, "WHEREAS, Seller has certain volumes of gas which are available for sale," implies that the parties intended that the seller would supply

---

[3] Dynegy's primary response to the force majeure event was to maintain contact with its upstream suppliers. It also delivered a portion of the gas that was due to the Ergon companies during the force majeure and eventually resumed full gas supply to both entities.

[4] The Ergon Refining contract's force majeure provision reads:

> In the event of either Party hereto being *rendered unable*, wholly or in part, by force majeure to carry out its obligations under this Contract, other than to make payment for gas delivered hereunder, it is agreed that on such Party's giving notice and full particulars of such force majeure in writing to the other Party as soon as practicable after the occurrence of the cause relied on, then the obligations of the Party giving such notice, so far as they are affected by such force majeure, shall be suspended during the continuance of any inability so caused but for no longer period, and such cause *shall as far as possible be remedied with all reasonable dispatch*.

(Emphasis added.) It continues with a list of force majeure events, which includes "hurricanes" as well as the "partial or entire failure of wells."

3

gas from designated sources. Second, the district court noted that the initial contract expressly referred to designated source points, which the parties later removed through a series of amendments. Taken together, these facts suggested to the court that there was "at least a latent ambiguity" in the contract as to whether Dynegy had a duty to seek replacement gas.

Because the district court concluded that the contract was ambiguous, it admitted parol evidence of trade usage in the form of unrebutted testimony given at trial by Dynegy's expert witness, whom it found "highly credible." The district court explained that the witness testified that it is a "universal practice" in the gas industry for a downstream supplier to declare force majeure when its upstream supplier has done so and that the downstream supplier is not expected or obligated to search for replacement gas. Moreover, the court noted that the witness testified that "there were sound economic reasons for this approach," and, particularly that it stabilized prices during a force majeure event by quelling demand. The court, based on this testimony, found that Dynegy had remedied with all reasonable dispatch the supply reduction caused by the hurricanes and held that Dynegy was excused from performing during the force majeure period.

Turning to the Ergon-WV contract, the district court ruled for Ergon-WV. Although this contract did not contain an "all reasonable dispatch" clause in its force majeure provision, it required that for some, if not all, force majeure events, the party invoking force majeure demonstrate that the event was one that it was unable to overcome with due diligence. The provision allowed a party to invoke force majeure if it was "rendered unable, by reason of an event of force majeure, to perform, wholly or in part" and listed events that qualify. Following its list of enumerated force majeure events, which included "hurricanes" and "partial or entire failure of wells or sources of supply of gas," the provision concluded "and any other causes, whether of the kind herein enumerated or

No. 11-60492

otherwise, not within the control of the party claiming suspension *and which by the exercise of due diligence such party is unable to prevent or overcome.*" (Emphasis added.) The court concluded that the language of the Ergon-WV force majeure provision was "far more straightforward" than the Ergon Refining provision, and thus that the Ergon-WV contract was unambiguous. According to the court, the Ergon-WV contract unambiguously "required [Dynegy] to find replacement gas or use due diligence to overcome the event." Because Dynegy conceded that it was physically capable of transporting gas to Ergon-WV's plant and that it could have purchased gas on the open market, the district court found that Dynegy could have provided replacement gas using due diligence, and so it was not entitled to invoke force majeure. The court, therefore, awarded Ergon-WV the difference between the cover price and the contract price plus pre-judgment interest.

Ergon Refining and Dynegy cross-appeal the district court's construction of the two contracts' force majeure provisions. Dynegy also contends on appeal that the district court erred by not requiring Ergon-WV to prove the amount of its damages.

## STANDARD OF REVIEW

"The standard of review for bench trials is well-established: 'findings of fact are reviewed for clear error; legal issues de novo.'" *Gebreyesus v. F.C. Schaffer & Assocs., Inc.*, 204 F.3d 639, 642 (5th Cir. 2000) (quoting *FDIC v. McFarland*, 33 F.3d 532, 536 (5th Cir. 1994)). Under the contracts' choice-of-law-provisions, all issues of contract construction are governed by Texas law.

In Texas, the existence of ambiguity in a contract is a question of law, so the Court reviews whether the Ergon contracts were ambiguous *de novo. In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006); *see Gebreyesus*, 204 F.3d at 642. "A contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent rules of construction." *In re D.*

5

No. 11-60492

*Wilson Constr. Co.*, 196 S.W.3d at 781 (citation and internal quotation marks omitted). A contract is unambiguous "[i]f the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

"The construction of an unambiguous contract is reviewed de novo, but while interpretation of an unambiguous contract is a question of law, clear error is the standard of review when a district court uses extrinsic evidence to interpret an ambiguous contract." *Tarrant Distribs. Inc. v. Heublein Inc.*, 127 F.3d 375, 377 (5th Cir. 1997) (citation and internal quotation marks omitted); *see Coker*, 650 S.W.2d at 394. This Court also reviews for clear error the district court's factual findings as to whether the parties fulfilled their duties under the contracts. *See Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193-94 (5th Cir. 1990).

Finally, this Court reviews the propriety of damages awarded to Ergon-WV as a question of law. *State v. Ware*, 86 S.W.3d 817, 822 (Tex. App.—Austin 2002, no pet.); *see also Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex. 1973) ("Damages must be measured by a legal standard."). The actual calculation of damages is an issue of fact subject to clear error review. *See Jackson*, 499 S.W.2d at 90.

## DISCUSSION

The resolution of these appeals turns on our interpretation of the contracts between Dynegy and the Ergon companies. We consider each of these agreements in turn.

*The Ergon Refining Contract*

The language of the Ergon Refining contract's force majeure provision states that a party to the contract is only entitled to invoke force majeure if that party "remedied with all reasonable dispatch" the force majeure event. The meaning of "with all reasonable dispatch" determines whether Dynegy had a

6

duty to secure replacement gas.[5] The district court concluded that this language was latently ambiguous and looked to extrinsic evidence to clarify the force majeure provision. Although we hold that the "reasonable dispatch" term is not ambiguous as a matter of law, it was nevertheless appropriate for the district court to look to extrinsic evidence to determine, as a factual matter, what "reasonable dispatch" is under the circumstances of this case.

The district court based its conclusion that the contract was latently ambiguous on the contract's reference to "certain volumes of gas" in the recital as well as on the initial presence of specified sources in exhibits to the contract. Although a "contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists," *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (citation omitted), there is a fine line between whether evidence of surrounding circumstances is used to *create* an ambiguity or to *reveal* an ambiguity. We need not navigate that line here.

The word "reasonable" is not ambiguous. When it modifies other terms in a contract—reasonable time, reasonable value—it is used by the parties to designate that specific time, value, or dispatch that "would be thought satisfactory to the offeror by a reasonable man in the position of the offeree." *Christy v. Andrus*, 722 S.W.2d 822, 824 (Tex. App.—Eastland 1987, writ ref'd n.r.e.) (citation and internal quotation marks omitted). This is a question of fact that must be answered by looking to the circumstances of the case, including "the nature of the proposed contract, the purposes of the parties, the course of

---

[5] Both Ergon companies also argue that the language, found in each contract, that a party must be "rendered unable" to perform "wholly or in part" by force majeure prevents Dynegy from invoking the provision, because even after the 2005 hurricanes, Dynegy had the physical capacity to continue supplying gas to the designated delivery points and could still purchase gas on the spot market. The district court did not place much weight on this argument, nor do we. The Ergon companies' interpretation would make the force majeure provisions essentially meaningless because it would mean that a seller could never invoke force majeure so long as there was some gas available anywhere in the world, at any price. It was not clearly erroneous for the district court to disagree with this interpretation.

dealing between them, and any relevant usages of trade." *Id.* (citation and internal quotation marks omitted). The district court thus properly looked to extrinsic evidence of standards used by the gas industry to determine what was "reasonable dispatch," even though it mistakenly thought that what was "reasonable" was ambiguous, rather than definite.

The district court did not clearly err in finding that "reasonable dispatch" does not include a duty to try to secure replacement gas. It cited "highly credible" expert testimony, which Ergon Refining did not rebut, that it is practice in the natural gas industry for a seller to simply pass on force majeure if its upstream suppliers have declared force majeure. It therefore was reasonable for the district court to conclude that Dynegy's  responses to Hurricanes Katrina and Rita were enough to satisfy the reasonable dispatch requirement in the Ergon Refining contract. Accordingly, the district court did not err in concluding that Dynegy was entitled to invoke force majeure under the Ergon Refining contract.

*The Ergon-WV Contract*

The force majeure provision in the Ergon-WV contract is significantly different from the one in the Ergon Refining contract. Like its counterpart in the Ergon Refining contract, it enumerates certain force majeure events, including hurricanes and well failures, but then it ends with a catch-all category: "and any other causes, whether of the kind herein or otherwise, not within the control of the party claiming suspension and which *by the exercise of due diligence such party is unable to prevent or overcome*." (Emphasis added.) Because Dynegy stipulated that it could have purchased some gas on the open market at some price after its suppliers declared force majeure, the case turns on whether the final clause modifies only the "other causes" or whether it modifies each of the enumerated force majeure events as well. Dynegy argues that the final clause applies only to other, unenumerated causes, and so the

8

provision does not require a party to use due diligence, such as attempting to buy replacement gas on the open market, to overcome an enumerated cause, such as a hurricane. Ergon-WV argues that the due diligence clause applies to all force majeure events.

Both possibilities are reasonable and both have support in Texas case law.[6] *Compare Va. Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 407 n.13 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (noting that the Texas trial court ruled that the gas buyer was not obligated to purchase gas on the open market after a force majeure event and cited *Tejas Power Corp. v. Amerada Hess Corp.*, No. 14-98-00346, 1999 WL 605550, at *3 (Tex. App.—Houston [14th Dist.] Aug. 12, 1999, no pet.), in support of its conclusion), *with Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 68 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[O]ne party's assumption about the source of supply—and [even] the other party's knowledge of that assumption—is not enough to excuse performance if alternative sources of supply are still available to fulfill the contract."). In addition, the last-antecedent canon of construction, which Texas courts apply (although they consider it "neither controlling nor inflexible"), provides additional support for the reasonableness of Dynegy's interpretation of the contract. *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) (citation omitted). Therefore, both Dynegy and Ergon-WV have proffered conflicting reasonable interpretations of the force majeure provision. That being the case, the contract is ambiguous and the district court should have considered the same extrinsic evidence that it relied on to illuminate the Ergon Refining contract to clarify the Ergon-WV contract.

---

[6] "[I]n diversity cases this Court has further held that while the decrees of lower state courts should be attributed some weight . . . the decision (is) not controlling . . . where the highest court of the State has not spoken on the point." *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967) (internal quotation marks and citation omitted, alterations in original).

No. 11-60492

The gas industry evidence the district court believed "highly credible" when it found that Dynegy had no duty to attempt to provide replacement gas to Ergon Refining similarly counsels that we conclude that the supplier had no such duty with respect to Ergon-WV either. Ergon-WV has provided no evidence to rebut Dynegy's expert witness. We thus hold that Dynegy was entitled to invoke the force majeure clause of the Ergon-WV contract and is not liable to Ergon-WV for damages stemming from its failure to search for replacement gas.[7]

## CONCLUSION

Although the district court mistakenly concluded that the Ergon Refining contract was ambiguous, it nevertheless correctly used extrinsic evidence to determine the parties' understanding of the contract's "reasonable dispatch" clause. We therefore AFFIRM the district court's judgment with respect to Ergon Refining. Because the district court erred in concluding that the Ergon-WV contract unambiguously required Dynegy to attempt to secure replacement gas, we REVERSE its decision with respect to Ergon-WV and RENDER a decision in favor of Dynegy.

---

[7] Because we conclude that Dynegy is not liable, we do not reach the issue of damages.

No. 11-60492

REAVLEY, Circuit Judge, dissenting in part:

I would affirm the district court judgment. I concur with the judgment that, due to the force majeure clause, Dynegy was not obligated to secure replacement gas for Ergon Refining. But the contract with Ergon-West Virginia required Dynegy to continue to supply the designated quantity of gas. Judgment, to be consistent with the contract, should compensate Ergon-West Virgina for the failure of that supply.

Dynegy's obligation to Ergon-West Virginia was not to deliver a particular source of gas; it was to deliver a designated quantity. If the Dynegy could not deliver its supply because of Katrina and Rita, the force majeure clause would be material; but nothing prevented Dynegy from performing its contract since gas supply was available. Dynegy agrees that it was capable of transporting gas that it could have obtained for Ergon-West Virginia. Therefore, its contract required it to do so.

11