# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 27, 2017

Lyle W. Cayce
Clerk

No. 14-41232

CARLA FREW; CHARLOTTE GARVIN, as next friend of her minor children Johnny Martinez, Brooklyn Garvin and BreAnna Garvin; CLASS MEMBERS; NICOLE CARROLL, Class Representative; MARIA AYALA, as next friend of her minor children, Christopher Arizola, Leonard Jimenez and Joseph Veliz; MARY JANE GARZA, as next friend of her minor children, Hilary Garza and Sarah Renea Garza,

        Plaintiffs - Appellees

v.

CHRIS TAYLOR, Commissioner of the Texas Health and Human Services Commission in his official capacity; KAY GHAHREMANI, State Medicaid Director of the Texas Health and Human Services Commission in her official capacity,

        Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 3:93-CV-65

Before DENNIS and COSTA, Circuit Judges, and Engelhardt,* District Judge.

PER CURIAM:**

---

   * Chief Judge of the Eastern District of Louisiana, sitting by designation.
   ** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-41232

More than two decades ago, this class action was brought on behalf of Medicaid-eligible children in Texas alleging that the State was failing to provide adequate Early, Periodic Screening, Diagnosis and Treatment (EPSDT) services. The EPSDT program focuses on preventative health care for indigent children, especially routine checkups and necessary follow up care. 42 U.S.C. §§ 1396a(a)(43); 1396d(r). Portions of an original Consent Decree and a 2007 Corrective Action Order are still in effect. But the district court recently concluded that one of the eleven corrective plans from the 2007 Order—one requiring Texas to provide annual reports on the number of eligible children receiving medical and dental checkups and to take steps to boost compliance in counties that lag behind statewide participation rates— was no longer needed. That decision was made in response to motions filed pursuant to a procedure the 2007 Corrective Action Order set forth in which, after four years, the parties would confer about the need for further action. If the parties were unable to reach agreement, as turned out to be the case, the "dispute [would] be resolved by the Court."

Plaintiffs nonetheless sought attorney fees incurred both in preparing their motion and opposing the one filed by Defendants. They asserted entitlement to fees both as a "prevailing party" under 42 U.S.C. § 1988 and as a matter of contractual right under a fee order that accompanied the 2007 Corrective Action Order. The district court agreed with Plaintiffs and awarded the full amount of requested fees without engaging in a reasonableness analysis that considered the Plaintiffs' degree of success.

For the reasons that follow, we agree that Plaintiffs had an entitlement to fees as the round of motion practice was the final step contemplated under the 2007 Corrective Action Order for which they were the prevailing party. As with a typical fee request, however, the district court should have engaged in

No. 14-41232

a reasonableness analysis that included evaluating the party's degree of success.

## I.

Only a few points about the lengthy procedural history of this case—which has included numerous appeals and a trip to the U.S. Supreme Court—need be described for the discrete attorneys' fee question we face. *See Frew v. Janek*, 780 F.3d 320, 323–27 (5th Cir. 2015) (providing more detailed history of the litigation).

In 1996, the district court entered a consent decree aimed at "enhance[ing] the availability of health care services, eliminate[ing] barriers that have the effect of preventing access to services, and more effectively inform[ing] recipients that services are available and important to their current and future health." The Decree dictated that the state meet a range of objectives. Some examples include: creating outreach units to spread information about EPSDT; improving provider training on a number of issues, such as coverage of mental health screening and services for teenagers; and implementing accountability measures.

More than a decade later, in 2007, Plaintiffs successfully obtained the agreed Corrective Action Order. The order resulted from Plaintiffs' motions to enforce and to find Defendants in violation of the original decree.[1] Each of the plans in the 2007 Order deals with a specific issue, such as transportation, health care provider training, and outreach efforts.

At the same time it entered the 2007 Corrective Action Order, the district court entered an order addressing attorney's fees (2007 Fee Order). The 2007 Fee Order has three paragraphs. The first starts with "Plaintiffs are entitled

---

[1] Plaintiffs filed such motions in 1998, 2004, and 2007. In both 1998 and 2004, Defendants unsuccessfully attempted to dissolve the Consent Decree. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004); *Frazar v. Ladd*, 457 F.3d 432 (5th Cir. 2006).

to recover attorneys' fees, costs and expenses related to their counsel's work on this case." It goes on to note that such fees "include" those listed in a 2004 order and those incurred through entry of the 2007 Fee Order, but does not have any express limiting language. The last sentence specifies that "[a]lthough Defendants agree not to challenge Plaintiffs' entitlement to fees, Defendants may challenge the amount of fees that are due." The second paragraph applies to "fees, costs and expenses incurred by Plaintiffs' counsel through the date of the Court's ruling on the parties' Joint Motion for Entry of Corrective Order." The third applies to "procedures for attorneys' fees, costs and expenses to be incurred following the date of the Court's ruling on the parties' Joint Motion for Entry of Corrective Action Order." Much of the debate that has ensued about the 2007 Fee Order concerns the following: Does the entitlement to fees discussed in Paragraph One apply to all "work on the case" with the other paragraphs then just describing different procedure for obtaining those fees, as Plaintiffs contend? Or, as Defendants contend, does the first paragraph acknowledge a right to fees only through entry of the 2007 Corrective Action Order pursuant to the steps described in the second paragraph?

This question about interpretation of the 2007 Fee Order arose in connection with the provision of the 2007 Corrective Action Order focused on "Check Up Reports and Plans for Lagging Counties." After the plan details the requirements concerning checkups and boosting participation in counties with low levels of compliance, its final provision states:

> Beginning four years from the date of entry of the corrective action orders ("order entry date"), counsel will confer to determine what further action, if any, is required. If the parties agree, they will so report to the Court within 120 days following the fourth anniversary of the order entry date. If the parties cannot agree within 90 days of the fourth anniversary of the order entry date, the dispute will be resolved by the Court. If the parties cannot

agree, either party may file a motion within 30 days of the completion of discussion among counsel.

Following this procedure, both sides conferred regarding the need for further action related to the checkup reports and lagging counties. When they did not reach agreement, both submitted motions to the district court. Plaintiffs sought further action regarding checkup reports and the lagging counties; Defendants sought to modify both the Corrective Action Order and Consent Decree under Rule 60(b)(5) to eliminate the provisions in both that related to checkup reports or lagging counties, asserting they had met all requirements. The district court denied the Plaintiffs' motion, and granted the Defendants' motion. Plaintiffs did not appeal that ruling.

Despite coming out on the losing end, Plaintiffs sought attorneys' fees for the time spent briefing both motions. The district court ruled that the Plaintiffs were entitled to attorneys' fees pursuant to the 2007 Fee Order, and emphasized that the Plaintiffs were the prevailing party both in obtaining the original consent decree and the corrective action order. The court ordered that Defendants pay Plaintiffs' their requested $129,140.00 for work on the contested motions. The court rejected Defendants request to analyze the reasonableness of the fees based on the degree of Plaintiffs' success, finding that because the basis of the fees was the agreed-upon Corrective Action Order and 2007 Fee Order, the "success or failure of the work" did not "determine[] payment in this instance."[2]

On appeal, the parties focus on two different bases for attorneys' fees: (1) a contractual basis rooted in whether the first paragraph of the 2007 Fee Order entitles Plaintiffs to permanent fees for the duration of this litigation; and (2)

---

[2] The district court also did not analyze the reasonableness of counsel's rate or the amount of time spent on particular tasks because Defendants did not raise arguments about the reasonableness of the fee beyond degree of success.

5

a statutory basis dependent on whether Plaintiffs are a "prevailing party" under 42 U.S.C. § 1988.  The latter implicates differing views among the circuits over the bounds of postdecree fee entitlement.  Defendants also argue that even if fees were generally available on either a contractual or statutory basis, the district court should have assessed the reasonableness of Plaintiffs' position and their degree of success.

## II.

The court has jurisdiction to hear this interlocutory appeal under the collateral order doctrine.  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (holding interlocutory orders appealable if they: "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.").  Whether an interim fee award meets the requirements of the collateral order doctrine is a case-by-case question.  Such awards are generally appealable, however, in cases like this one in which the underlying litigation involves a consent decree of indefinite duration.  *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 766–67 (5th Cir. 1996).

The Court reviews *de novo* the question of whether Plaintiffs are "prevailing parties" under 42 U.S.C. § 1988.  *Davis v. Abbott*, 781 F.3d 207, 213 (5th Cir. 2015).  The Corrective Action Order and 2007 Fee Order are interpreted according to contract law.  *See Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006) ("When interpreting a consent decree, general principles of contract interpretation govern."); *Ergon-W. Virginia, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 424 (5th Cir. 2013) (explaining that unambiguous contracts are reviewed *de novo*; a district court's interpretation of an ambiguous contract that uses extrinsic evidence is reviewed for clear error).  The actual award of attorneys' fees is reviewed for abuse of discretion,

with factual findings subject to review for clear error and legal conclusions reviewed *de novo*. *Davis*, 781 F.3d at 213.

## III.

We first consider the statutory argument for fees based on "prevailing party" status. Attorneys' fees for the victorious plaintiff have become a staple of modern civil rights litigation. Section 1988(b) provides that for any action or proceeding to enforce a given set of civil rights laws, the court may award attorneys' fees to the prevailing party. 42 U.S.C. § 1988(b). Although the language is discretionary, the Supreme Court has held that prevailing parties should be awarded reasonable fees, absent exceptional circumstances. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (internal citation omitted). A party that successfully obtains a settlement agreement that is made enforceable through a consent decree is a prevailing party. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001), citing *Maher v. Gagne*, 448 U.S. 122 (1980); *see also El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422 (5th Cir. 2009) (noting that obtaining a consent decree may be the basis for awarding attorneys' fees). Fees may also be recoverable for successful work done after entry of the consent decree that is done to enforce the decree. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986) (holding that a party may be entitled to attorneys' fees for postdecree enforcement work under the fee-shifting provision of the Clean Air Act, analogizing and relying in part on lower court decisions allowing fees under § 1988 for "post-judgment monitoring"); *Walker*, 99 F.3d at 767 ("Monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees . . . Plaintiffs may recover attorneys' fees for actions enforcing an earlier judgment,

if they prevail in such enforcement.  Actions to prevent the modification of an earlier judgment are sufficiently similar for the same reasoning to apply. . .").

Under this established law, the district court repeatedly awarded fees to Plaintiffs without opposition for their attorneys' time spent obtaining the original decree and the 2007 Corrective Action Order, as well as for monitoring and compliance work contemplated by those orders.  *See* Appellants' Br. 18 (arguing that Plaintiffs' counsel is not entitled to fees "for any of their work on Lagging Counties after Plaintiffs' attorneys began drafting their motion for further action in January 2012");  What at is at issue here is the fees related to their work drafting the motion for further action and defending against the state's motion.  Defendants argue that because Plaintiffs were unsuccessful in extending the defendants' obligations under the lagging counties provision, they are not a "prevailing" party.

Defendants would have a strong argument if the Plaintiffs' unsuccessful attempt to extend the lagging counties provisions was not rooted in a procedure Plaintiffs bargained for and obtained in the 2007 Corrective Action Order.  Two circuits have taken a restrictive approach to fee requests for postdecree work that proves unsuccessful.  In *Alliance to End Repression v. City of Chicago*, 356 F.3d 767 (7th Cir. 2004), the Seventh Circuit rejected a request for fees related to work taking place between 1994 and 2001 that unsuccessfully opposed the City's motion to modify a consent decree entered in the 1970s and also failed to obtain a finding that the City was in contempt of the decree.  *Id.* at 768–69. Although the court suggested that fees for postdecree monitoring efforts may be recoverable when the consent decree requires that a party fill a specified monitoring function, the decree at issue did not provide for such monitoring. *Id.* at 772 ("Neither the original nor the modified decree imposes on [Plaintiff class's] lawyers any duty of operating the compliance machinery. They could have walked away from the case as soon as the consent decree was approved

confident that a compliance machinery in which they had been given no role had been established.").  The Sixth Circuit took a similar approach in finding that fees may be awarded only for postdecree work that is both "necessary to enforce the prior order and result[s] in a subsequent court order or agency determination that at the very least secures plaintiffs' initial success in obtaining the consent decree."  *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 625 (6th Cir. 2013) (internal quotation omitted).  But again, the work for which fees were sought and denied in that case—including an unsuccessful motion for an injunction in a separate but related case, work training counsel from other health advocacy organizations, and lobbying with legislators when opposing counsel was not present and did not authorize such efforts—was not provided for in the earlier consent decree.[3]  *Id.* at 629–34, 636–39.

Both the Sixth and Seventh Circuit find support for their view in the "material alteration of the legal relationship" standard the Supreme Court articulated in rejecting a "catalyst" theory for attorneys' fees in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–05 (2001).  *See Alliance to End Repression*, 356 F.3d at 771 (noting that "[m]onitoring may reduce the incidence of violations of a decree, but if it does not produce a judgment or order, then under the rule of *Buckhannon* it is not compensable," and specifically holding that compensation for "piggyback monitoring" efforts by counsel that are not required by a court order "do not survive *Buckhannon*"); *Binta B.*, 710 F.3d at 624 (concluding that *Buckhannon*

---

[3] The fact-specific nature of this inquiry is evident from the postdecree fees that the Sixth Circuit did uphold; it affirmed fees for work it could determine was both necessary and resulted in securing earlier success, such as time analyzing a reform proposed by the defendants that was necessary to prepare for litigation that partially maintained the plaintiffs' success, and remanded for the district court to determine whether other activities were both necessary and either secured or advanced the Plaintiffs' victory. *Id.* at 640.

does not go so far as to prohibit fees for any postdecree work that does not result in a change to the parties' legal relationship, but it must be "accord[ed] . . . some weight in the post-decree context"). Other circuits, however, do not see *Buckhannon* as curtailing preexisting case law on postdecree fees and thus treat such requests more favorably.[4]  *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451–52 (9th Cir. 2010) (discussing how *Buckhannon* did not overturn *Delaware Valley* nor require the Ninth Circuit to change how it assessed post-judgment monitoring); *Johnson v. City of Tulsa, Okla.*, 489 F.3d 1089, 1108 (10th Cir. 2007) (rejecting what it took as *Alliance*'s requirement that postdecree work must result in a material change in order to entitle a party to fees).

But this is not a case in which Plaintiffs simply ended up being unhappy with the terms of, or compliance with, a consent decree and sought to modify it or extend it in a manner not contemplated by the decree. We thus need not decide which approach of our sister circuits should be followed in deciding the extent to which "prevailing party" status obtained in an early stage of a lawsuit continues to apply to unanticipated disputes arising later in the case. Plaintiffs here seek attorneys' fees for a discrete set of motions contemplated in the 2007 Corrective Action Order for which they indisputably obtained prevailing party status. Negotiations and motion practice concerning the status of the checkup reports and lagging counties provision come 2011 was part of what Plaintiffs achieved as a result of their 2007 success. This

---

[4] Before *Buckhannon*, courts routinely approved fees for postdecree work that was not successful but that was nonetheless viewed as intertwined with the original decree. *See, e.g. Plyler v. Evatt*, 902 F.2d 273, 281 (4th Cir. 1990) (awarding fees for an unsuccessful attempt to oppose modification of a consent decree because counsel had an obligation to oppose modification when such efforts were "essential to the preservation of the integrity of the consent decree as a whole"); *Turner v. Orr*, 785 F.2d 1498, 1504 (11th Cir. 1986) (holding that a prevailing plaintiff is entitled to fees for work seeking to enforce the judgment, "regardless of the outcome of each individual post-judgment effort involving litigation").

established framework makes the motions at issue more like a compliance or dispute resolution procedure that was a part of the parties' agreement than a new, distinct motion to obtain a form of relief beyond what was established in the original decree. Defendants argue that unlike the mandatory negotiation provision, the Corrective Action Order did not require the filing of a motion in 2012, and Plaintiffs should thus not receive fees when their decision to file a motion ended up not being a sound one.[5] At a minimum, however, part of what Plaintiffs achieved in 2007 was the opportunity to have the Court decide whether the "checkup reports and lagging counties" plan should continue. Prevailing party status obtained in 2007 thus extended to the final step contemplated in the Corrective Action Order for the lagging counties provision. *See Walker*, 99 F.3d at 767 ("Monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees."). That the work arises out of a discrete procedure expressly anticipated in the Corrective Action Order also eliminates the concern expressed by the Sixth and Seventh Circuits that early success in institutional litigation could create a "gravy train" or "cottage industry" of never-ending fee requests for civil rights attorneys regardless of what they accomplish.[6] *See Binta B., 710 F.3d at 625; Alliance to End Repression,* 356

---

[5] Defendants' argument that conferring was required but motion work was discretionary is in tension with some language in the Corrective Action Order. It requires that the district court decide whether further action is necessary if the parties cannot agree: "If the parties cannot agree within 90 days of the fourth anniversary of the order entry date, the dispute will be resolved by the Court." The plain language thus appears to contemplate the oblation ends only when the parties agree no further action is required or the court makes that determination.

[6] Nor does the Corrective Action Order allow nonparties to file a motion for further relief, as was the case in *Alliance to End Repression.* 356 F.3d at 771–72 (noting that anyone, not just class counsel, could have brought the contempt actions under the decree provisions for an indefinite period of time and comparing the procedures to adversary proceedings within bankruptcy). The procedural framework at issue here was limited to Plaintiffs' counsel and to this one-time motion practice before the district court.

F.3d at 772.  Our reasoning would not extend, for example, to a motion filed by Plaintiffs in 2017 seeking to reinstitute the "lagging counties" provision.

## IV.

Of course, prevailing party status does not automatically entitle a party to the full amount of attorneys' fees incurred.  Courts review such requests for reasonableness, which includes consideration of the success achieved.  *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. . . . [T]he most critical factor [in determining a reasonable fee] is the degree of success obtained.").

The district court did not engage in that typical analysis, likely because it seemed to conclude that Plaintiffs were entitled to fees based not just on "prevailing party" status as to the 2007 Corrective Action Order alone, but also as a contractual right under the 2007 Fee Order.  And it apparently read that agreement as providing a contractual entitlement to fees not subject to reasonableness review.

Because we have determined that Plaintiffs are a prevailing party for purposes of the two motions at issue as a result of their success in obtaining that procedure as part of the 2007 Corrective Action Order, we do not reach the full question of whether the separate 2007 Fee Order entitles them to prevailing party status throughout this litigation.[7]  To the extent the district

---

[7] Interpretation of the 2007 Fee Order is less clear than the district court's order may suggest.  As mentioned above, it is not obvious how the paragraphs relate to one another.  Does the statement that "Plaintiffs are entitled to recover attorneys' fees, costs and expenses related to their counsel's work on this case" apply only to the following paragraph or all three paragraphs?  Even if the third paragraph discussing procedures for obtaining fees for expenses incurred following entry of the 2007 Corrective Action Order stands by itself, in addressing those procedures, is it agreeing that Plaintiffs are entitled to such fees?

court read the 2007 Fee Order as providing a right to fees not subject to typical court scrutiny, however, we must consider at least that aspect of the ruling in deciding Defendants' back-up argument that the fees should have been reviewed for reasonableness.

We conclude that even if the 2007 Fee Order entitles Plaintiffs to attorneys' fees throughout this litigation, it does not exempt the requested fees from the judicial scrutiny for reasonableness that typically applies to prevailing party fee requests.  The 2007 Fee Order requires that if the parties cannot agree on attorneys' fees, costs and expenses, Plaintiffs shall submit their motion for fees to the court.  What would be the point of motion practice if Plaintiffs have the right to full fees without ordinary court scrutiny?  If this were the parties' agreement, Defendants would be indefinitely required to pay for any and all fees for work related to the Corrective Action Order that Plaintiffs choose to incur, no matter how unreasonable or unsuccessful their efforts may be.  Indeed, the district court acknowledged that it must review whether the time spent and rates charged for the motion practice was reasonable but Defendants did not object on either ground; the court simply did not consider the degree of success.  We see little basis for finding that the agreement allows some aspects of ordinary fee scrutiny but not others.  Indeed, courts often engage in full reasonableness review, which includes considering the result obtained as one factor, even for attorney fee awards provided by contract.  *See, e.g.*, *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001); *Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, 302 F. App'x. 323, 325–328 (6th Cir. 2008); *Malin Int'l Ship Repair & Drydock, Inc. v. M/V SEIM SWORDFISH*, 611 F. Supp. 2d 627, 634–35 (E.D. La. 2009).  Absent more direct language waiving the reasonableness review that ordinarily applies to prevailing party fees, Plaintiffs' position is not a plausible reading of the order.  *See* Robert L. Rossi, ATTORNEYS' FEES § 9:36 (2016)

("When an award of attorneys's fees is authorized by contract, the fee awarded must be reasonable even in the absence of a provision requiring that the fee be reasonable."); *Spirtas Co. v. Ins. Co. of the State of Pa.*, 555 F.3d 647, 653 (8th Cir. 2009) (noting that when the fee provision does not contain a reasonableness requirement, "[o]ur court and Missouri's courts . . .generally will infer a reasonableness requirement in all contractual fee provisions as a matter of public policy").   The district court therefore erred in not considering the degree of success among the many factors that are assessed in determining whether prevailing party attorneys' fees are reasonable.

\* \* \* \* \*

We conclude that Plaintiffs were the prevailing party for purposes of the two motions at issue as court consideration of them was part of the relief they successfully obtained in the 2007 Corrective Action Order.   But because the district court did not consider the degree of success in analyzing the reasonableness of the fees requested, the interim fee order is VACATED and REMANDED for the district judge to conduct this inquiry.

No. 14-41232

JAMES L. DENNIS, Circuit Judge, concurring in Parts I-III and concurring in the judgment:

I agree with the majority opinion's discussion of prevailing-party status and with its disposition of this appeal. However, in my view, the district court correctly concluded that it is the 2007 Fee Order, not 42 U.S.C. § 1988, that entitles the Plaintiffs to attorneys' fees, and I am convinced that this fact should control the reasonableness analysis on remand.

The Fee Order explicitly states, "Plaintiffs are entitled to recover attorneys' fees, costs and expenses related to their counsel's work in this case." It also notes that the entitlement to fees "include[s]" those incurred through the date of the 2007 order. "The participle *including* typically indicates a partial list," *Include*, BLACK'S LAW DICTIONARY (10th ed. 2014); thus, this provision could easily be read as clarifying that the fees for present and future work are governed by the same rules. Additionally, the order contains a distinct paragraph that "concerns attorneys' fees, costs and expenses incurred by Plaintiffs' counsel through the date of the Court's ruling" on the CAO, suggesting that the rest of the order concerns expenses incurred *after* the date of the Court's ruling. The order also establishes a procedure "for attorneys' fees, costs and expenses to be incurred following the date of the Court's ruling" on the Corrective Action Order (CAO), which includes a requirement that the parties meet annually to discuss fees and seek a court order if they cannot agree. At the very least, the presence of these provisions makes the Fee Order ambiguous with respect to the extent of the Plaintiffs' entitlement to attorneys' fees. The district court's conclusion, based on extrinsic evidence, that the Plaintiffs were entitled to fees for the legal work at issue on the basis of the Fee Order was therefore not clearly erroneous. *See Ergon-W. Va, Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419, 424 (5th Cir. 2013) ("[C]lear error is the standard

15

of review when a district court uses extrinsic evidence to interpret an ambiguous contract.").

Of course, I agree with the majority that even a contractual award must be reasonable; indeed, the Fee Order here states that, as prevailing parties, the Plaintiffs are entitled "to be awarded their *reasonable* fees, costs and expenses." (Emphasis added). Contrary to the majority opinion's view, the district court did not believe that the Plaintiffs were contractually entitled to attorney fees "not subject to reasonableness review."[1] Op. at 12. Instead, the court correctly read the Consent Decree, the CAO, and the Fee Order to impose a duty upon the Plaintiffs to provide a check against the Defendants' default or modification of their obligations thereunder, and to further provide that the plaintiffs shall be reimbursed for attorneys' fees reasonably incurred in the performance of that duty. The decree and CAO call upon the plaintiffs merely to provide a crucible to test the defendants' motions for discontinuance or modification of their obligations, and the district court did not err in finding that the plaintiffs and their attorneys acted reasonably in providing diligent and proper opposition to the defendants' motions and that their requested fee amount reflected the work that counsel performed.

Furthermore, I disagree with the majority opinion's suggestion that *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), governs the reasonableness analysis when the entitlement to an award is based in contract. The scrutiny that typically applies to prevailing party fee requests in civil rights cases—and the idea that the degree of success obtained is "the most critical factor," *id.*—is derived from interpretations of § 1988 and readings of Congressional intent. It

---

[1] Indeed, the district court acknowledged that the Defendants could challenge the reasonableness of an award made pursuant to the Fee Order and gave examples of the factors that could be considered during this sort of review; the defendants chose to challenge the fee award only on the basis of the degree of success.

is therefore not applicable where the entitlement is contractually based. In *Hensley*, the Supreme Court relied on the legislative history of § 1988 to observe that, in enacting the fee-shifting provision, "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Id*. at 429–30, 436. But where a contractual fee agreement entitles a party to attorneys' fees related to their counsel's work on a particular case, "[t]he contractual entitlement . . . [has] supplemented or superseded the statutory one," *All. To End Repression v. City of Chicago*, 356 F.3d 767, 770 (7th Cir. 2004); the scope of Congress's authorization under § 1988 therefore has no bearing, *cf. McKeage v. TMBC, LLC*, 847 F.3d 992, 1003 (8th Cir. 2017) ("In cases involving *contractual* fee-shifting provisions, there is no relevant underlying congressional intent that might preclude a common fund award.").

To be clear, our circuit precedent still requires the district court to consider the degree of success obtained when analyzing the reasonableness of a contractual award. In *Johnson v. Georgia Highway Express, Inc.*, a case brought under Title VII of the Civil Rights Act, our court laid out twelve factors that must be considered in determining the reasonableness of a fee award, including "[t]he amount involved and the results obtained." 488 F.2d 714, 717 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989). We have since applied those twelve factors when determining the reasonableness of attorneys' fees based in contract. *See, e.g.*, *Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993). But unlike under *Hensley*, degree of success under *Johnson* is not the most critical factor. *See Johnson* 488 F.2d at 717–19 (listing the twelve factors without suggesting relative importance). The district court's denial of the Plaintiffs' motion and grant of the Defendants' motion should thus not have a disproportionate influence on

the reasonableness of the related fee award.  I therefore respectfully disagree with the majority's conclusion that the source of the Plaintiffs' entitlement to attorneys' fees has no bearing on the reasonableness review.

In any event, I emphasize that, even under the analysis adopted by the majority opinion, the district court is in no way bound to reduce the Plaintiffs' fee award to zero after considering the reasonableness of the award in light of the degree of success obtained.  The Plaintiffs' attorneys' fees were incurred in the performance of a duty that was imposed by the CAO that they successfully obtained in 2007; the district court should therefore consider the Plaintiffs' success in obtaining that order when it analyzes the reasonableness of attorneys' fees incurred in the performance of their decretal duty.[2]  And the district court should remember that, although the Supreme Court has highlighted the importance of this factor in determining whether a fee award requested under § 1988 is reasonable, it is still one factor out of many and is not alone be determinative of the district court's analysis.  *See Hensley*, 461 U.S. at 436–37 ("There is no precise rule or formula for making [reasonableness] determinations. . . . The court necessarily has discretion in making this equitable judgment.").

---

[2] Failing take this earlier success, and the resulting duties, into account would lead to an absurd and unjust result.  If the Plaintiffs and their attorneys are held to be entitled to little or no attorneys' fees unless they completely defeat the defendants' motions, the Plaintiffs may be forced to perform their duty the advice and assistance of compensated counsel.  Neither the statute nor the relevant court decisions can fairly be read to require such results.